UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

| | |
|---|---|
| **EDREES BRIDGES,**<br><br>    Plaintiff,<br><br>    v.<br><br>**PRINCE GEORGE'S COUNTY, MARYLAND**, a municipality; and,<br>**PRISON MINISTRY OF AMERICA,**<br><br>    Defendants. | Case No.: 8:21-cv-01319<br><br>COMPLAINT AND JURY DEMAND |

### COMPLAINT

Plaintiff **EDREES BRIDGES** files this Complaint against Defendants PRINCE GEORGE'S COUNTY, MARYLAND and PRISON MINISTRY OF AMERICA (collectively "Defendants"), for religious discrimination in violation of the First Amendment of the United States Constitution's Establishment and Free Exercise Clauses and 42 U.S.C. § 1983 under 28 U.S.C. § 1331, and states as follows:

1

### Introduction

1. Plaintiff Edrees Bridges has been a volunteer chaplain for Defendant Prince George's County's jail in Upper Marlboro Maryland since 2018. On April 23, 2021, Bridges learned that Defendant was accepting applications for a paid chaplain position and requested an application to apply.

2. But Edrees Bridges could not even complete the application. This is because Defendant PG County illegally required all applicants to sign a so-called "Statement of Applicant's Christian Faith."

3. This "Statement of Applicant's Christian Faith" requires applicants to affirm that they "believe in one God, Creator and Lord of the Universe, the co-eternal Trinity, Father, Son, and Holy Spirit," that "Jesus Christ, God's Son, was conceived by the Holy Spirit, born of the Virgin Mary, lived a sinless life, [and] died a substitutionary atoning death on the cross," and that "the Bible is God's authoritative and inspired Word…without error in all its teachings, including creation, history, its own origins, and salvation."

4. The Establishment Clause prohibits the kind of religious test Defendants required Edrees Bridges to complete.

5. The "Statement of Applicant's Christian Faith" illegally requires Bridges to abandon his religious beliefs as a Muslim as a condition of eligibility to even apply to be a paid chaplain in Prince George's County Jail. This violates his rights under the Establishment Clause and Free Exercise Clause of the First Amendment.

## Jurisdiction and Venue

6. This Court has original federal question jurisdiction over Plaintiff's claims of violations of the United States Constitution and 42 U.S.C. § 1983, under 28 U.S.C. § 1331.

7. This Court has federal question jurisdiction, under 28 U.S.C. § 1343 over Plaintiff's claims regarding the deprivation under color of State law of rights secured by the First and Fourteenth Amendments to the Constitution of the United States and the laws of the United States.

8. This Court has personal jurisdiction over Defendants because Defendant PG County resides and conducts business in the State of Maryland and Defendant PMA conducts business in the State of Maryland.

9. This Court has jurisdiction over Plaintiff's constitutional claims under 42 U.S.C. § 1983.

10. Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, 28 U.S.C. § 1343, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general, legal, and equitable powers of this Court.

11. Plaintiff's claims for attorneys' fees and costs are predicated upon 42 U.S.C. §§ 1988 which authorize the award of attorneys' fees and costs to prevailing parties, under 42 U.S.C. § 1983.

12. This lawsuit seeks damages under 42 U.S.C. § 1983.

13. Venue is proper under 42 U.S.C. § 1391 as to the Defendants because Defendants operate within the geographical boundaries of the State of Maryland, and the substantial part of the acts described herein occurred within this district.

**Plaintiffs**

14.     Plaintiff Edrees Bridges is an Assistant Imam at the Ali Khan Islamic Center, where he leads congregational prayers, counsels community members, and otherwise serves as a religious leader. Bridges has a Masters in Divinity with a concentration in Islamic Chaplaincy from the Bayan Claremont School of Theology and is currently pursuing his Doctorate in Ministry at the Claremont School of Theology.

**Defendants**

15.     Defendant Prince George's County, Maryland ("PGC" or "PG County") confines sentenced persons in its facilities as well as those awaiting trial. PG County promulgates policies, customs, and practices regarding the religious exercise of persons confined in its facilities.

16.     Defendant Prison Ministry of America ("PMA") is a non-profit organization that has contracted with PG County to oversee official duties regarding the provision of religious services to people incarcerated at PG County's jail. Defendant PMA describes its purpose and vision as "to bring the message of abundant life through faith in Jesus Christ to citizens in their lowest hour, their time of greatest spiritual need."

**Nature of this Action**

17.     This is an action for damages and declaratory and injunctive relief arising under the First and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. § 1983. Plaintiff seeks costs and attorneys' fees under 42 U.S.C. § 1988.

18.     Defendants have not identified any compelling government interest for requiring chaplain applicants to sign a "Statement of Applicant's Christian Faith."

19. Nor have Defendants narrowly tailored their customs, practices, and policies regarding its application processes to any purported government interest.

20. Defendants have failed to enforce the applicable laws, policies, directives, ordinances, and regulations in the least restrictive means possible.

### Defendant PG County Jail enlists Defendant Prison Ministry of America to hire a PG County Jail chaplain

21. Defendant PG County entered into a contract—the PMA-PGC Agreement—with Defendant Prison Ministry of America to hire a chaplain who would possess state authority in the exercise of their chaplain duties at Defendant PG County's jail.

22. In entering into the PMA-PGC Agreement, Defendant PG County delegated to Defendant PMA and its agents public functions that positioned both to act under the color of state law with respect to fulfilling their obligations under the PMA-PGC Agreement.

23. The chaplain role that Defendants were recruiting and hiring for envisioned a person that would work "with the Prince George County's Inmate Services Division to develop and oversee religious programs at the County Jail facility."

24. The chaplain that Defendants sought to hire at PG County's jail would "supervise, direct, and sponsor interdenominational worship services and religious educational activities for inmates."

25. The chaplain would "establish rules and guidelines governing the conduct of religious services" at the County Jail and then "supervise the religious services being provided to assure that the rules and guidelines are being adhered to."

26. The chaplain would "screen and supervise the activities of all volunteers who wish to participate in religious programs" at the County Jail.

27. The chaplain Defendants sought to hire would serve as Defendant PG County's official with authority to determine what religious services are provided at the jail and to whom, how those services are provided, and who provides these services.

### Defendants Require Chaplain Applicants to be Christian

28. Since 2018, when Plaintiff Edrees Bridges began volunteering at PG County's jail, Bridges would minister to the Muslims incarcerated there. He would lead Muslims in congregational prayer and offer spiritual guidance and education to Muslims before and after the prayers.

29. When the pandemic began in 2020, PG County stopped allowing volunteers, including Bridges, to enter the facility to support the religious needs of incarcerees. Nevertheless, Bridges remained a volunteer and eagerly awaited the resumption of his duties at PG County's jail.

30. On April 23, 2021, Mark Maciel—who is PMA's executive director—called Bridges and left a voicemail. On the voicemail, Maciel identified himself and indicated that he was calling Bridges "on behalf of Prince George's County jail."

31. Bridges called Maciel back after hearing the voicemail. During the call between Bridges and Maciel, Maciel asked if Bridges was still interested in volunteering at Prince George's County Jail. Bridges stated that he was still interested in continuing his volunteer duties at the facility.

32. Bridges also asked Maciel when PG County jail would allow volunteers back into the facility. Maciel explained that PG County Jail was in the process of hiring a chaplain and that volunteers would be allowed back when the facility made that hire.

33. Bridges expressed to Maciel his interest in being hired for the position. After discussing the responsibilities and other details regarding the position, Maciel offered to send Bridges an application. Bridges and Maciel exchanged email addresses and concluded their call.

34. On April 24, 2021, Maciel emailed Bridges a copy of the PG County Jail Chaplain application and a job description of the chaplain position. Maciel directed Bridges to complete both and "attach a resume" when he emails the materials back to Maciel. The "Chaplaincy Application" and "Position Job Description" are both attached to the Complaint as Exhibit A and Exhibit B, respectively.

35. Bridges, who was excited to apply for the position, reviewed the application immediately. He was disturbed that Defendants' application made clear that Bridge's faith as a Muslim would exclude him from the applicant pool.

36. Though Bridges satisfied the minimum qualifications for the position other than the qualification that requires "at least two years membership in a recognized church," Bridges could not submit the application because the application requires him to "subscribe" to a "Statement of Applicant's Christian Faith" that is incompatible with Bridges' beliefs as a Muslim.

37. The "Statement of Applicant's Christian Faith" is a part of PMA's policy establishing the requirement that all persons PMA hires, including the chaplain at Defendant PG County's Jail, "are committed to a lifestyle of Christianity and agree with our statement of faith."

38. This "Statement of Applicant's Christian Faith" is consistent with Defendant PMA's vision, which is to "bring the message of abundant life through faith in Jesus Christ to citizens in their lowest hour, their time of greatest spiritual need."

39. Plaintiff Edrees Bridges cannot maintain his faith and act in furtherance of Defendant PMA's mission, because he is Muslim rather than Christian.

40. Bridges cannot sign Defendants' "Statement of Applicant's Christian Faith," because to do so, Bridges would have to abandon his religious beliefs as a Muslim.

41. Defendants' "Statement of Applicant's Christian Faith" is incompatible with Bridges' religious beliefs, including but not limited to, in the following ways:

   a. As a Muslim, Bridges does not believe in the "co-eternal Trinity; Father, Son, and Holy Spirit" articulated in Defendants' "Statement of Applicant's Christian Faith."

   b. While Bridges believes Jesus Christ to be God's prophet, Bridges does not believe that Jesus Christ is "God's son...conceived by the holy Spirit…[and] the only mediator between God and Man."

   c. Bridges does not believe that people, like him, who "do not believe that Jesus Christ [is] their Lord and Savior" are condemned to be, after death, "raised from the dead for eternal suffering and separation from God."

   d. Bridges does not believe "in one holy, universal, and apostolic Church."

42. On May 3, 2021, Defendant Maciel emailed Bridges to inquire about his application. Bridges did not submit an application for the chaplain position for one reason only:

because he was unwilling to sign the "Statement of Applicant's Christian Faith" and otherwise submit to the illegal religious test that Defendants have made a part of the application process.

### Count I
### Violation of First and Fourteenth Amendment to the United States Constitution
**(Free Exercise of Religion)**

43. Plaintiff hereby realleges and incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

44. Defendant PG County is a governmental entity subject to Section 1983 and the First and Fourteenth Amendments of the U.S. Constitution.

45. Defendant PMA, as a Government contractor fulfilling an essential government service, is acting under color of law and is therefore also subject to Section 1983 and the First and Fourteenth Amendments of the U.S. Constitution.

46. Defendants' hiring practices and its use of the "Statement of Applicant's Christian Faith" caused and continues to cause Plaintiff harm because it forces him to choose between applying for a position with Defendants or sacrifice his core sincerely-held religious beliefs.

47. Defendants' hiring practices do not permit Plaintiff and other similarly situated Muslims or other non-Christians to apply for the chaplain position while maintaining their religious beliefs.

48. Defendants have deprived and continue to deprive Plaintiff of his right to the free exercise of religion as secured by the First Amendment to the United States Constitution, made applicable to the States by the Fourteenth Amendment to the United States Constitu-

tion, by both imposing and implementing unconstitutional and discriminatory hiring practices that substantially burdens Plaintiffs' religious exercise by compelling Plaintiff to profess religious beliefs incompatible with Islam.

49. Defendants' hiring practices caused and continues to cause Plaintiff harm because they unlawfully attempt to coerce Plaintiff into sacrificing his core sincerely-held religious beliefs.

50. Defendants have arbitrarily and unjustly adopted hiring practices that are not neutral insofar as Defendants' hiring practices explicitly require applicants to be Christian or to be willing to convert to Christianity.

51. By imposing and implementing the above-described hiring practices, Defendants have imposed a substantial burden on Plaintiff's exercise of Islam.

52. Imposition of such a burden is not in furtherance of a compelling government interest and is not the least restrictive means of furthering any governmental interest, compelling or otherwise. Defendants could have, but did not, allow all persons of all religious backgrounds to apply for the chaplain position as is standard for jails and prisons across the country.

53. Plaintiff is entitled to a declaration that Defendants' hiring practices create a substantial burden to the free exercise of Plaintiff's religion, is not justified by a compelling government interest, and is in violation of Plaintiff's First and Fourteenth Amendment rights to their free exercise of religion.

54. Plaintiff is entitled to issuance of a preliminary and permanent injunction in the form requested in the Prayer for Relief below.

55. Defendants' unlawful actions caused Plaintiff harm and Plaintiff is entitled to injunctive and declaratory relief, compensatory and punitive damages, in addition to all such other relief this Court deems just and proper including costs and attorneys' fees in this action.

## Count II
## Violation of First and Fourteenth Amendment to the United States Constitution
**(Establishment Clause)**

56. Plaintiff hereby realleges and incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

57. Defendant PG County is a governmental entity subject to Section 1983 and the First and Fourteenth Amendments of the U.S. Constitution.

58. Defendant PMA, as a Government contractor fulfilling an essential government service for PG County in accordance with the PMA-PGC Agreement, is acting under color of law and is therefore also subject to Section 1983 and the First and Fourteenth Amendments of the U.S. Constitution.

59. Prior to the PMA-PGC Agreement, Defendant PGC had a similar agreement with a different proselytizing Christian organization, Good News Jail and Prison Ministry ("Good News"). That agreement between PG County and Good News—which dates back decades—was for PG County to make periodic "donations" to Good News and in exchange Good News would oversee all religious services at PG County's jail.

60. PG County's agreements with PMA and Good News reflect PG County's longstanding, facility-wide efforts to officially prefer Christianity in its jail and disfavor Islam. In recent years, PG County has treated Christians congregating for prayer differently than Muslims doing the same thing.

11

61. Defendants' hiring practices, the involvement of Defendant PMA and its sectarian purpose, and Defendants' use of the "Statement of Applicant's Christian Faith" treat Muslims and others less favorably than Christians, creating a denominational preference against Islam.

62. Defendants' hiring practices, the involvement of PMA and its sectarian purpose, and Defendants' use of the "Statement of Applicant's Christian Faith" are tantamount to an endorsement of Christianity and appear as such to any reasonable observer.

63. Defendants have deprived and continue to deprive Plaintiff of his right to be free from religious discrimination in violation of the Establishment Clause to the First Amendment to the United States Constitution, by imposing and implementing discriminatory job application practices that discriminate against Plaintiff on the basis of his religion.

64. Defendants have required Plaintiff to abandon his faith and become Christian as a condition of his employment.

65. This condition has the purpose and effect of advancing Christianity insofar as Defendant PMA's mission is to disseminate a Christian message to people who are incarcerated and its discriminatory hiring practices are aimed at advancing that mission.

66. Because Defendants' hiring practices constitute a religious test probing the theological beliefs of applicants, Defendants' hiring practices result in an excessive entanglement with religious matters.

67. By identifying a particular set of Christian beliefs and requiring applications to subscribe to them, Defendants are establishing an official government-sanctioned Christian orthodoxy. This excessively entangles Defendants in matters of Christian theology.

68. By implementing the above-described hiring practices, Defendants have officially preferred Christianity over Islam and other faiths.

69. Defendants' hiring practices, the involvement of PMA and its sectarian purpose, and Defendants' use of the "Statement of Applicant's Christian Faith" treats Muslims and others less favorably than Christians lack a compelling state interest. Defendants' purpose is to proselytize, which is not a legitimate government purpose.

70. Defendants' unlawful actions caused Plaintiff harm and Plaintiff is entitled to injunctive and declaratory relief, compensatory and punitive damages, in addition to all such other relief this Court deems just and proper including costs and attorneys' fees in this action.

## **Prayer for Relief**

Plaintiff requests that this Honorable Court enter judgment in their favor and against Defendants, and enter an Order awarding the following relief:

1. A declaratory judgment that:

    a. Defendants' use of "Statement of Applicant's Christian Faith" as a part of their hiring process for positions regarding Defendants PG County Jail is illegal.

    b. Defendants' actions to restrict the chaplain position to persons who are Christian violate the law.

2. An injunction:

    a. Enjoining Defendants from utilizing a "Statement of Applicant's Christian Faith" as a part of their hiring process for positions regarding PG County jail.

    b.    Requiring Defendants to remedy the constitutional and statutory violations identified above, including, but not limited to, eliminating any existing policy whereby Defendants restrict the chaplain position to persons who are Christian.

3. An award of compensatory and punitive damages against Defendants under 42 U.S.C. § 1983.

4. An award of attorneys' fees, costs, and expenses of all litigation, under 42 U.S.C. § 1988; and,

5. Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of the above-referenced causes of action.

Respectfully submitted,

CAIR LEGAL DEFENSE FUND

BY:   /s/ Lena Masri
LENA F. MASRI (20251)
GADEIR I. ABBAS (20257) *
JUSTIN SADOWSKY (21028)
453 New Jersey Ave, SE
Washington, DC 20003
Phone: (202) 488-8787

*Mr. Abbas is licensed in VA, not in D.C. Practice limited to federal matters.*

/s/ Mirriam Z. Seddiq
MIRRIAM Z. SEDDIQ (27908)
JUSTIN EISELE (19326)
SEDDIQ LAW FIRM
110 North Washington Street
Rockville, MD 20850
Justin.eisele@seddiqlaw.com
Phone: 301.513.7832

Dated: May 27, 2021