## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## GREENBELT DIVISION

**EDRESS BRIDGES**,

          Plaintiff,

    v.

**PRINCE GEORGE'S COUNTY
MARYLAND**, a municipality; and, **PRISON
MINISTRY OF AMERICA**,

          Defendants.

Case No. 8:21-cv-01319

---

### DEFENDANTS PRINCE GEORGE'S COUNTY, MARYLAND AND PRISON MINISTRY OF AMERICA'S JOINT MOTION TO DISMISS

Defendants Prince George's County, Maryland and Prison Ministry of America by and through their respective undersigned counsel, and pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6), move to dismiss the Complaint for lack subject matter jurisdiction and for failure to state a claim.  In support thereof, Defendants refer this Honorable Court to the accompanying memorandum of law.

Respectfully Submitted,

/s/ Nada N. Higuera, Esq.
Nada N. Higuera, CA SBN 299819
25026 Las Brisas Road
Murrieta, CA 92562
(951) 600-2733
*Attorney for Defendant*
*Prison Ministry of America*

1

DATED: January 31, 2022

/s/ Shelley L. Johnson, Esq.
Shelley L. Johnson, Esquire,
Fed. Bar No. 15853
1301 McCormick Drive, Suite 4100 Largo,
Maryland 20774
(301) 952-3932
*Attorney for Defendant Prince George's
County, Maryland*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

**EDRESS BRIDGES**,

              Plaintiff,

    v.

**PRINCE GEORGE'S COUNTY
MARYLAND**, a municipality; and, **PRISON
MINISTRY OF AMERICA**,

              Defendants.

Case No. 8:21-cv-01319

## MEMORANDUM OF LAW

Defendants Prince George's County, Maryland and Prison Ministry of America, by and through their respective undersigned counsel, move to dismiss the Complaint based on lack of subject matter jurisdiction and for failure to state a claim.  In support thereof, Defendants advances the following arguments.

### I. INTRODUCTION

Plaintiff Edress Bridges' filed the above suit seeking injunctive relief and asserting violations of his constitutional rights when Defendants Prince George's County, Maryland and Prison Ministry of America (hereinafter "PMA") failed to hire him for the Chaplaincy position that he never applied for.  The Complaint is void of any alleged facts that, if proven, would entitle Plaintiff to damages.  There is no evidence that Defendants failed to provide him with an application when requested, made applications inaccessible, prevented him from submitting an application, or threatened him in any manner.  On the contrary, Plaintiff admits that he was provided an application when one was requested.  Defendant  PMA called and emailed Plaintiff

reminders of the application deadline.  Despite Defendant PMA's efforts, Plaintiff chose not to submit an application for the Chaplaincy position.  By failing to apply for the position and seeking clarification of document that "disturbed" him, Plaintiff divested this Court of jurisdiction to hear his claims because he lacks standing.

In addition, the removal of the alleged "disturbing" document renders Plaintiff's claims moot.   Even if the Plaintiff did have standing and his claims were not moot, he fails to state a claim because he does not sufficiently allege that the County or PMA interfered with his practice of religion or showed preference to Christian religion by not hiring him as a chaplain because he is Muslim.  For these reasons, Plaintiff's Complaint must be dismissed with prejudice.

## II. STATEMENT OF FACTS

On or about October 23, 2020, Prison Ministry of America, a non-profit religious organization, was awarded a contract to provide religious services to inmates of Prince George's County Maryland's Department of Corrections. (ECF 20-2, Invitation for Bid.) The contract is specific. It requires PMA to hire one Christian, one Islamic, and one Jewish chaplain to perform religious services. It states the following:

> Contractor shall ensure religious services are provided, at a minimum, to the major religions: Christianity, to include Protestant/Catholicism services, Islamic [sic], and Judaism. Contractor shall provide two dedicated staff members for the Islamic and Judaism religions. These staff members shall be actively practicing and representing the religion…

(Ex. 1A, p. 22, ¶ O.)  The contract also requires PMA to hire "a Chaplaincy Supervisor to manage the [] Inmate Religious Services program…"  (ECF 20-1, p. 21, ¶ D.)

Around April 20201, Mark Maciel, PMA's executive director, started the hiring process for the chaplaincy supervisor position. (ECF 20-3, Declaration of Mark Maciel.)  The contract

does not specify the faith background of the supervisor, and Mr. Maciel opened the position to all faiths. (ECF 20-3, ¶ 20.)  Mr. Maciel personally made phone calls to a list of past religious volunteers who visited the prison, including Muslim volunteers. (ECF 20-3, ¶ 9; ECF 1, pp. 6-7.) The Plaintiff was on that list. ((ECF 20-3, ¶ 10.)  Mr. Maciel thanked him for volunteering in the past and informed the Plaintiff of the open supervisor position. (ECF 20-3, ¶¶ 10-11.)  On April 24, 2020, Mr. Maciel sent the job application to Plaintiff. ((ECF 20-3, ¶ 13; ECF 1, pp. 6-7.)  Mr. Maciel also followed-up with Plaintiff several times to inquire about the status of the application, but Plaintiff did not respond. (ECF 20-3, ¶¶ 14-15.)  To date, Plaintiff has not applied for the position. (ECF 20-3, ¶ 16.)  On May 20, 2021, PMA hired and trained a chaplain supervisor. (ECF 20-3,  ¶ 24.)

The four-page application contained the Statement of Applicant's Christian Faith on the final page. (ECF 20-4, Application.)  Although the application appeared to be specific to a Christian chaplain, PMA did not intend that to be the case. (ECF 20-3 ¶¶ 18 -21.)  Neither the contract nor PMA required applicant to practice a specific faith. (ECF 20-3, ¶¶ 18 -21.)  PMA voluntarily revised its application to remove the Statement of Applicant's Christian Faith from its application. (ECF 20-3 ¶ 29.)

Instead of actually applying for the position or even clarifying whether the position required the Statement of Christian Faith, the Plaintiff filed this lawsuit.  He asserts two causes of action under the First and Fourteenth Amendments of the United States Constitution.  In Count I, the Plaintiff claims his First Amendment right to free exercise of religion was violated because he was precluded from applying for the chaplain position while maintaining his religious beliefs. (*See* ECF 1, pp. 44-47).   In  Count II, the Plaintiff asserts his First Amendment rights under the

Establishment Clause were violated because the County and PMA has an illegal preference for Christian over Muslims. (*See* ECF 1, pp. 60-64).

## III. STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted) (internal quotations omitted)). "[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted) (internal quotation marks omitted)). "'[N]aked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557)).

Subject matter jurisdiction may be challenged in one of two ways: facially or factually. *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017); *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). In a facial challenge, plaintiff is "afforded the same procedural protections as [he] would receive under Rule 12(b)(6) consideration, " wherein " the fats alleged in the complaint are taken as true, " defendant's challenge "must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Id*. (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)).

However, the presumption of truthfulness normally accorded a complaint's allegations does not apply in a factual challenge to subject matter jurisdiction. *Id*. If a factual challenge to subject matter jurisdiction is raised, the court may "go beyond the allegations of the complaint and

in an evidentiary hearing determine if there are facts to support the jurisdictional allegations. *Id*. (quoting *Adams*, 697 F.2d at 1219.)

## IV. ARGUMENT

This case must be dismissed because the Plaintiff has failed to state allegations which are sufficient to support standing under the *Federal Rules of Civil Procedure* 12(b)(1) and the Plaintiff has failed to state a claim upon which relief can be granted under the *Federal Rules of Civil Procedure* 12(b)(6). First, the Plaintiff does not have standing because he did not apply for the position. The case is also moot because PMA voluntarily removed this statement from its application. Next, the Plaintiff has failed to state a claim under the First Amendment because he does not sufficiently plead that the County or PMA interfered with his practice of religion or showed preference to Christian religion by not hiring him as a chaplain because he is Muslim.

## A.     The Court lacks jurisdiction because Plaintiff lacks standing

Standing is a threshold issue. "[W]hether the plaintiff has made out a 'case or controversy' between himself and the defendant . . . is the threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). A motion to dismiss for lack of Article III standing is evaluated under *Federal Rules of Civil Procedure* 12(b)(1). Plaintiffs must show that they: "(1) suffered injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, ___U.S. ___, 136 S.Ct. 1540, 1547 (2016). "[A]t the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Id*. (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

Moreover, "the case-or-controversy requirement applies to all stages of a federal case" *Williams v. Ozmint*, 716 F.3d 801, 808-809 (4th Cir. 2013). Thus, "[i]f a live case or controversy

ceases to exist after a suit has been filed, the case will be deemed moot." *Pender v. Bank of Am. Corp.*, 788 F.3d 354, 368 (4th Cir. 2015). "The doctrine of mootness can be described as 'the doctrine of standing set in a time frame: the requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997)).

In addition to standing, the "constraint of Article III" also includes the principle of ripeness, which "presents a 'threshold question [] of justiciability.'" *Scoggins v. Lee's Crossing Homeowners* Ass'n, 718 F.3d 262, 269 (4th Cir. 2013) (citation omitted). *See Nat'l Ass'n for the Advancement of Colored People v. Bureau of the Census*, PWG-18-891, 2019 WL 355743, at *8 (D. Md. Jan 19, 2019) ("NAACP") (describing standing and ripeness as "overlapping facets" of subject matter jurisdiction). Whereas standing focuses on who can sue, ripeness "'concerns the appropriate timing of judicial intervention.'" *Cooksey v. Futrell*, 721 F.3d 226, 240 (4th Cir. 2013) (quoting *Va. Soc'y for Human Life, Inc. v. FEC*, 263 F.3d 379, 389 (4th Cir. 2001)); *see* NAACP, 2019 WL 355743, at *8 (noting that standing addresses *who* may sue, and ripeness addresses *when* a party may sue).[1]

Here, the Plaintiff does not have standing (*who* may sue) because the Plaintiff must have actually applied for the position and personally suffered an actual and concrete injury-in-fact. Moreover, this claim is not ripe (*when* a party may sue) because the Plaintiff has not actually tried to submit an application and been denied the opportunity to do so. Finally, even if the Plaintiff suffered an injury based on the "Statement of Applicant's Christian Faith" on PMA's application, the case is moot because PMA voluntarily removed this statement from its application.

---

[1] As constitutional law scholar Erwin Chemerinsky explained, "Although the phrasing makes the questions of who may sue and when they sue seem distinct, in practice there is an obvious overlap between the doctrines of standing and ripeness." ERWIN CHEMERINKSKY, FEDERAL JURISDICTION § 2.4 (4th ed. 2003).

### i. The Plaintiff did not suffer an injury-in-fact

The Complaint attempts to asserts constitutional violations based his alleged denial to practice his religion and a hiring practice that allegedly precluded Muslims when he never applied for the position and he failed to assert any fact to support the contention that he was denied his right to practice his religion. Article III precludes an individual who never applied for the position and never suffered an actual and concrete injury-in-fact from filing suit.

To establish Article III standing, a plaintiff must have, first and foremost, suffered an injury-in-fact. *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83 U.S. 83, 103 (1998) (an injury-in-fact is the "[f]irst and foremost" of standing's three elements). To demonstrate an injury-in-fact, the plaintiff must have suffered "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. ___, 136 S. Ct. 1540, 1548 (2016)) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1993)). Alternatively, a threatened injury can satisfy Article III standing, although "not all threatened injuries constitute an injury-in-fact." *Beck*, 848 F.3d at 271; see *South Carolina*, 912 F.3d at 726. "Threatened injury must be certainly impending to constitute injury in fact." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408, 133 S.Ct. 1138, 1147-48, 185 L.Ed.2d 264 (2013).   A plaintiff cannot rely on an "attenuated chain of inferences" nor "on speculation" to claim injury. *Id*.; (quoting Lujan, 504 U.S. at 562).   "The complainant must allege an injury to himself that is distinct and palpable, as opposed to merely abstract." *Whitmore v. Arkansas*, 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990).

Here, the Plaintiff is unable to articulate any concrete, particularized, and actual injury he suffered.   In the Complaint, Plaintiff admitted that he did not submit the application for the Chaplaincy position.  (ECF 1, ¶ 2, 42.)   Despite PMA's email inquiry regarding the status of his

application submission, he failed to communicate to the Defendants why he failed to submit an application. Clearly based upon the facts asserted in the Complaint, Defendants did not forbid or discourage Plaintiff from applying for the Chaplaincy position.  (ECF 1, ¶¶ 33-34, 42., ECF 20-3 ¶ 10.) In PMA's director did the opposite, he personally made phone calls to a list of past religious volunteers, including Muslim volunteers. (ECF 20-3, ¶ 9.) The Defendant was on that list. (ECF 20-3, ¶ 10.) Mr. Maciel informed the Defendant of the open supervisor position. (ECF 20-3, ¶¶ 10-11.) Mr. Maciel sent the job application to the Defendant. (ECF 20-3, ¶ 13.) Mr. Maciel also followed-up with the Defendant several times to inquire about the status of the application, but the Defendant did not respond. (ECF 20-3, ¶¶ 14-15.) The Defendant did not applied for the position. (ECF 20-3, ¶ 16.) Nor had he responded to Mr. Maciel's correspondence. Based on all of the above, there is no evidence to suggest that Defendants would not have accepted Plaintiff's application and subjected it to the same review as any other applicant.

Instead, the Plaintiff claims that he was injured because he "reviewed the application and was disturbed …." (ECF 1, ¶ 35.)  There is nothing concrete and particularized about the Plaintiff's alleged injury. Nor did the Plaintiff personally suffer any actual injury at all.  Also, there is no threatened injury that is forthcoming.  Thus, Plaintiff's subjective belief that he would be rejected based on his inability to sign a document cannot satisfy the "injury in fact" element of standing when there is no evidence to suggest that he in fact was rejected based on not signing the document because he never applied or told his application would not be considered unless the document was signed, which did not occur because Plaintiff never asked the question.

### ii. The Plaintiff's claims are not ripe for judicial review

The "constraint of Article III" includes principles of standing as well as ripeness, which "presents a 'threshold question [] of justiciability.'" *Scoggins v. Lee's Crossing Homeowners*

*Ass'n*, 718 F.3d 262, 269 (4th Cir. 2013) (citation omitted). A claim is not ripe for judicial review "'if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Id.* at 270 (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). In other words, "the ripeness requirement is designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements' . . . ." *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 732-33 (1998) (citations omitted). A claim "should be dismissed as unripe if the plaintiff has not yet suffered injury and any future impact remains wholly speculative." *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 758 (4th Cir. 2013).

Had the Plaintiff attempted to submit the application and was forbidden or prevented from doing so, the case may not be as black and white. Or if Plaintiff had responded to the PMA Director's email asking whether his application would be accept if he refused to sign the "disturbing" document and was told that his application would be considered incomplete and not considered, standing may be found.  However, because the Plaintiff failed to submit an application even after he was personally recruited to apply or simply ask the question, he suffered no injury. Plaintiff's failure to satisfy this threshold requirement divests this Court of jurisdiction and the Complaint must be dismissed.

### iii. The Plaintiff's claims are moot

Even if the Plaintiff suffered a concrete and particular injury-in-fact, this case is moot because the "Statement of Christian Faith" has been voluntarily removed from PMA's application. "The doctrine of mootness can be described as 'the doctrine of standing set in a time frame: the requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43,

68 n.22 (1997)). "Mootness principles derive from [the requirement in Article III of the Constitution that federal courts may adjudicate only disputes involving a case or controversy." *Williams*, 716 F.3d at 808 (internal quotation marks omitted). "The case-or-controversy requirement applies to all stages of a federal case." *Id*. Thus, "[i]f a live case or controversy ceases to exist after a suit has been filed, the case will be deemed moot and dismissed for lack of standing." *Pender v. Bank of Am. Corp.*, 788 F.3d 354, 368 (4th Cir. 2015). "A case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Williams*, 716 F.3d at 809 (internal quotation marks omitted).

Here, PMA voluntarily revised its application to remove the Statement of Applicant's Christian Faith from its application. (ECF 20-3, ¶ 29.) Even though there was never a "religious test," the Plaintiffs entire case is based on this Statement of Applicant's Christian Faith. The "religious test" is no more, and this case is moot.  Moreover, because the Plaintiff did not apply for the position or provide notice of why he failed to apply, the position was filled and there is no longer a live issue for this Court to adjudicate.

**B.      PLAINTIFF HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED UNDER RULE 12(b)(6)**

Since Plaintiff fails to assert any facts in the Complaint alleging that the Defendant's interfered with his practice of religion or showed preference to Christianity by not hiring him, his claims asserting violations of the Free Exercise Clause and the Establishment Clause fail as a matter of law The Plaintiff fails to state a claim under both the Free Exercise Clause and the Establishment Clause because he does not sufficiently allege that the County or PMA interfered with his practice of religion or showed preference to Christian religion by not hiring him as a chaplain because he is Muslim. In a *Fed. R. Civ. P.* 12(b)(6) context, the reviewing court must

determine whether the complaint alleges sufficient facts to raise a right to relief above the speculative level and to state a claim to relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Every complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is not enough to merely assert "an unadorned, the defendant unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. "[A] formulaic recitation of the elements of a cause of action will not do." *Id*. (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertions[s]' devoid of 'further factual enhancement.'" *Id*. While court accepts as true all "well-pleaded factual allegations," it is not required to accept as true allegations that are mere conclusions, unwarranted deductions of fact, or unreasonable inferences. *Twombly, supra*, 550 U.S. at 555.

Furthermore, under narrow circumstances, a court may rely on extrinsic materials to determine a motion to dismiss without converting the proceeding into a motion for summary judgment. See *Fed. R. Civ. P.* 12(d) (discussing when conversion occurs and what process must be followed to make it proper). For example, "when a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.'" *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc*., 367 F.3d 212, 234 (4th Cir. 2004) (internal quotation omitted).

Here, the Plaintiff fails to state a claim because he does not sufficiently plead that PMA or the County interfered with his practice of religion or showed preference to Christian religion by not hiring him as a chaplain because he is Muslim. Moreover, as explained below, even if the County or PMA wanted to specifically hire a Christian chaplain for the chaplaincy supervisor

position, that would been lawful. Ultimately, PMA does have to impose faith requirements because it is contractually required to hire one Christian chaplain, one Muslim chaplain, and one Jewish chaplain. Therefore, Plaintiff's Free Exercise Claim and Establishment Clause are insufficient and should be dismissed.

### i.    The Plaintiff's Free Exercise claim fails

On a Free Exercise claim, a plaintiff must allege facts plausibly showing that the government denied him a reasonable opportunity of pursuing [his] faith comparable to the opportunity afforded other applicants who adhere to Christian religious precepts. See *Cruz v. Beto* 405 U.S. 319, 322 (1972). Here, the Plaintiff does not, and cannot, allege this.

The focus of the Plaintiff's Free Exercise claim is that the practice of *his* religion is curtailed by PMA's failure to hire Muslim chaplains. However, the Plaintiff does not cite any authority that to accommodate a person's Free Exercise right, the government must hire the person into an existing position and that failure to do so curtails that person's free exercise rights. Further, the Plaintiff does not claim that he has been denied the opportunity to practice his religion or that he has incurred punishment for doing so. On the contrary, PMA is contractually required to hire a Muslim chaplain (ECF 20-1, p. 22) and allows for Muslim chaplains to become volunteers (ECF 20-1, p. 21-23). The Plaintiff makes no claim that he was denied the ability to apply for the chaplain position or was in fact denied from the position. Since the Plaintiff has not been denied *his* right to practice *his* religion, the Plaintiff fails to state a claim under the Free Exercise Clause.

Even if the County or PMA wanted to specifically hire a Christian chaplain out of the multiple chaplain positions that were available, that would not have violated the Free Exercise Clause. It is well established that prisons are not required to employ full-time chaplains to assist inmates of all religious faiths under the First Amendment. See, e.g. *Cruz*, 405 U.S. at 322; see also

*Johnson-Bey v. Lane* 863 F.2d 1308, 1312 (7th Cir. 1988) ("Prisons are entitled to employ chaplains and need not employ chaplains of each and every faith to which prisoners might happen to subscribe…."); see also *Cooper v. Rogers* 788 F.Supp. 255 *7 (D. Md. 1991) (citing *Allen v. Toombs* 827 F.2d 563, 569). As such, the County and PMA were well within the bounds of the Free Exercise Clause if they wanted to hire a Christian chaplain as the chaplaincy supervisor.

### ii.    The Plaintiff's Establishment Clause claim also fails

The Establishment Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion." U.S. CONST. Amend. I. It is well established that, at the minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which "establish a [state] religion or religious faith or tends to do so." *Lynch v. Donnelly,* 465 U.S. 668, 678 104 S.Ct. 1355, 1361 (1984); see also *County of Allegheny v. American Civil Liberties Union, Greater Pittsburgh Chapter*, 492 U.S. 573, 591 (1989); quoting *Everson v. Board of Ed. of Ewing,* 330 U.S. 1, 15-16 (1947). For a challenged state action to be valid under the Establishment Clause it (1) must have a secular purpose, (2) have a primary effect that neither advances nor inhibits religion, and (3) not foster an excessive government entanglement with religion. *Mellen v. Bunting,* 327 F.3d 355, 372 (4th Cir. 2003). In the prison context, prison regulations are valid if reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78 (1987).

Plaintiff's assertion that Defendants preferred Christians over Muslims is insufficient to plead an Establishment Clause claim. Plaintiff states conclusory allegations and unreasonable inferences that are unsupported by any factual allegations, and thus fails to meet the pleading standards set forth in *Twombly.* According to the contract between the County and PMA, PMA is obligated to hire chaplains from the three major religions represented at the prison (i.e.

Christianity, Islam, and Judaism). Nowhere in the contract is there a mandate that the chaplain supervisor position be a member of any particular religion. Specifically, the contract states "[PMA] **shall** ensure religious services are provided to the major religions: Christianity, to include Protestant/Catholicism services, Islamic and Judaism." (ECF 20-1, p. 22, ¶ O) (emphasis added).

Furthermore, the questions about an applicant's Christian faith were optional for employment and meant to be personal data. (ECF 20-3, ¶¶ 18 -21). In fact, the application suggests that an applicant could leave the section blank if the applicant felt uncomfortable with anything herein. If the Plaintiff did not agree with the application's questions, the Plaintiff could have left it blank or written "not applicable." Similarly, the Statement of Christian faith, was also optional for the applicant to sign. Nowhere on the application was it required to sign the Statement of Christian Faith.

Finally, the Plaintiff never inquired with PMA about the application's questions about the Christian faith and the Statement of Christian Faith for its chaplain supervisor position. Therefore, the Establishment Clause should be dismissed.

## V. CONCLUSION

For the aforementioned reasons, the Plaintiff's Complaint should be dismissed for failure to state allegations which are sufficient to support standing under the *Federal Rules of Civil Procedure* 12(b)(1) and failure to state a claim upon which relief can be granted under the *Federal Rules of Civil Procedure* 12(b)(6).

DATED: January 31, 2022                         /s/ Nada N. Higuera, Esq.
                                                Nada N. Higuera, CA SBN 299819
                                                25026 Las Brisas Road
                                                Murrieta, CA 92562
                                                (951) 600-2733
                                                *Attorney for Defendant*
                                                *Prison Ministry of America*

16

DATED: January 31, 2022                                      /s/ Shelley L. Johnson, Esq.
                                                             Shelley L. Johnson, Esquire, Fed. Bar No.
                                                             15853 1301 McCormick Drive, Suite 4100
                                                             Largo, Maryland 20774
                                                             (301) 952-3932
                                                             *Attorney for Defendant Prince George's
                                                             County, Maryland*

**CERTIFICATE OF SERVICE**

I certify under the penalty of perjury that above DEFENDANTS PRINCE GEORGE'SCOUNTY,

MARYLAND AND PRISON MINISTRY OF AMERICA'S JOINT MOTION TO DISMISS

was served via ECF.

s/ Shelly Padilla
Shelly Padilla
