UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

| | |
|---|---|
| **EDREES BRIDGES,** | |
| Plaintiff, | **Case No. 8:21-cv-01319** |
| v. | |
| **PRINCE GEORGE'S COUNTY, MARY- LAND**, a municipality; and, **PRISON MINISTRY OF AMERICA,** | |
| Defendants. | |

## PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

Defendants Prince George's County, Maryland, and Prison Ministry of America (PMA) again rehash the same arguments PMA asserted and fully briefed in response to Plaintiff's Motion for Preliminary Injunction more than six months ago. *See* Dkt. 12. Defendants here argue, just like there, that Mr. Bridges lacks standing (Motion to Dismiss at 7), that he has no injury in fact (*id.* at 9), that Bridges' claims are both not ripe (*id.* at 10) and yet somehow moot (*id.* at 11), and that Bridges has failed to state a claim under the Free Exercise Clause (*id.* at 14) and the Establishment Clause (*id.* at 15).

Defendants claim that the Christian faith declaration required as a condition of Plaintiff's consideration for employment with Prince George's County Jail was a mistake—optional, even—and therefore never constituted a violation of the Free Exercise or Establishment Clauses. But no reasonable person would have thought that the declaration that was attached as part of the application was optional or a mistake. Defendants say Bridges lacks standing because he did not make phone calls, send emails, or otherwise take action to sort

1

out the State's misunderstanding on his own. But to any reasonable person such as Bridges, the application was clear on its face, requiring Bridges to be a Christian in order to apply. There is nothing in the law that requires a plaintiff discriminated against because of his religion to make follow-up inquiries to determine whether that discrimination was a mistake. Finally, Defendants presume that, because they amended their chaplain employment application two months after initiation of this lawsuit – and after a Christian candidate had been hired and trained, Dkt. 20 at 9 – Plaintiff's claim must be moot. But because there are still actions this Court can take, including requiring Defendants to reopen the position as well as to award damages, this case is not moot.

Defendants, representing the State of Maryland, offered an application for employment that required Plaintiff – a Muslim – to attest that "the Bible is God's authoritative and inspired Word… without error in all its teachings, including creation, history, its own origins, and salvation." Despite Defendants' protests that the application included no language suggesting the attestation was mandatory, it also did not include language to suggest it was optional, or even inapplicable to non-Christian candidates.

Plaintiff incorporates prior briefing addressing these issues (Plaintiff's Motion for Preliminary Injunction, Dkt. 12, Plaintiff's Reply to PMA's Opposition, Dkt. 44) and briefly summarizes the arguments here for the Court's reference.

I.      **The Court has subject matter jurisdiction.**

A.      **Bridges has standing.**

Mr. Bridges must have an injury-in-fact to establish standing, and he has, thanks to the discrimination in the employment application materials themselves. Mr. Bridges could not even complete the application consistent with his religious beliefs. PMA and Prince George's

County Jail excluded Plaintiff from consideration for employment before he could even apply. And courts have found standing on far less.

As explained fully in Plaintiff's previous briefing, Dkt. 44, the courts have found Article III injury existed where defendants merely deprived plaintiffs of information about housing availability based on race, *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-74 (1982), and where a plaintiff simply read an advertisement under the Fair Housing Act that indicated racial preferences to an ordinary reader, *Ragin v. Harry Macklowe Real Estate Co.*, 6 F.3d 898, 904 (3d Cir. 1993); *see also Saunders v. General Services Corp.*, 659 F. Supp. 1042 (E.D. Va. 1987) (further expanding the *Havens Realty* statutory rights approach).

There is no dispute that Bridges—not just any potential candidate, but a current volunteer at the jail—saw the application and would have been interested in the position but for the fact it facially excluded Muslims like himself. He thus has standing for the same reason as the plaintiffs in *Havens Realty*, *Ragin,* and *Saunders.*

### a. Plaintiff's claims are ripe for judicial review

Again, Defendants point to actions Mr. Bridges should have taken to make sure that the State really, really intended to discriminate against him by imposing a religious test as a condition of employment. But the Constitutional standard does not look to what the Plaintiff could have done to remedy the State's violation of his fundamental rights. It simply looks to what the State ***did****.*

Defendants argue that Mr. Bridges' claims cannot be ripe because he did not submit the challenged application, suggesting he could have submitted it incomplete, with the religious test page unsigned (Motion at 11). Setting aside the fact that Defendants failed to inform Mr. Bridges that he could exercise that option and still be considered for the position, Bridges

did not apply for one reason only: because he was unwilling to sign the "Statement of Applicant's Christian Faith" and submit to the illegal religious test that Defendants made part of the application process. Complaint ¶ 42. Submitting the document would itself be a violation of his faith. Defendants' hiring process and its use of the "Statement of Applicant's Christian Faith" caused Plaintiff harm because it forced him to choose between applying for a position with Defendants or sacrificing his sincerely-held religious beliefs. *Id.* at ¶ 46.

This case is ripe because, as explained above, Defendants already violated the Constitution and caused injury to Bridges by posting the job application with the unconstitutional condition under *Havens Realty, Ragin*, and *Saunders*. But even if that were not enough, it is hornbook law that one does not need to bid or apply when the bid would be futile given the unlawful requirement. *Image Carrier Corp. v. Beame*, 567 F.2d 1197, 1201 (2d Cir. 1977) (no requirement to bid for standing if bidding would be futile); *LeClerc v. Webb*, 419 F.3d 405, 413 (5th Cir. 2005) ("strict adherence to the standing doctrine may be excused when a policy's flat prohibition would render submission futile"). Either way, this case is ripe.

### b. Bridges' claims are not moot.

Defendants did not remove the offending Christian faith requirement until after the hiring process was complete. Defendants claim this completion of the hiring process with the unlawful condition and subsequent amendment of the application that is no longer open now moots Mr. Bridges' claims. But a case is only moot if "it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. SEIU*, 567 U.S. 298, 307 (2012) (cleaned up); *see generally* Dkt. 44 at 4-5. Here, this Court can force Defendants to reopen the position. It can also issue a declaratory judgment, award damages, and award attorneys' fees and costs.

4

## II. Plaintiff has successfully pled First Amendment violations.

### A. Defendants violated the Free Exercise Clause.

Defendants erroneously characterize Mr. Bridges' Free Exercise claims as centering on "PMA's failure to hire Muslim chaplains." Motion at 14. Starting from this place of logical fallacy, Defendants find it impossible to locate a Constitutional violation. But they correctly point out that a Free Exercise claim requires Plaintiff to "allege facts plausibly showing that the government denied him a reasonable opportunity of pursuing [his] faith comparable to the opportunity afforded other applicants who adhere to Christian religious precepts." *Id.* (citing *Cruz v. Beto*, 405 U.S. 319, 322 (1972). Defendants circulated an employment application tailored to Christians, and then hired a Christian from that process, excluding Plaintiff and other similarly situated Muslims, as well as other non-Christians, from even applying for the position while maintaining their religious beliefs. This is allegation enough to establish Mr. Bridges' Free Exercise claim.

In unlawfully preferring Christianity and restricting Mr. Bridges' free exercise of religion, the Defendants have done nothing to establish that such an act is in furtherance of any compelling governmental interest. While Defendants are quick to point out that several chaplaincy positions at the Prince George's County Jail permissibly require candidates who practice specific faiths including Islam and Judaism, the Chaplaincy Supervisor position for which the application at issue was promulgated was not a religion-specific one. Defendants could have easily followed the practices of the Maryland Department of Corrections, or the Federal Bureau of Prisons, and allowed people of all religious backgrounds to qualify for the chaplain position. Dkt. 44 at 5.

PMA wanted to ensure that the director was someone who held their same beliefs. They accomplished that goal by unconstitutionally requiring that the applicant be an evangelical Christian. They got what they wanted, now claiming it is too late to do anything about it, and Mr. Bridges' Free Exercise rights were violated in the process.

Defendants' citation to *Johnson-Bey v. Lane*, 863 F.2d 1308, 1312 (7th Cir. 1988), shows how far Defendants have misconstrued the situation. *Johnson-Bey* held that a prison's failure to have a Moorish Science chaplain on staff, alone, did not violate an incarceree's rights. This is because "Prisons are entitled to employ chaplains and need not employ chaplains of each and every faith to which prisoners might happen to subscribe." *Id.* But *Johnson-Bey* focused on the incarcerees' rights, where here, it is the rights of Bridges, a prospective chaplain, that are at issue. Consistent with that, there is no evidence in *Johnson-Bey* that the government discriminated against any Moorish Science chaplains in their chaplaincy hiring. The government simply did not have a Moorish Science chaplain. Here, had Defendants hired Bridges, it would not have a Christian chaplain, and that too would have been fine. Likewise, it would have been fine if—without discriminating against Muslims—Defendants hired a more qualified Christian chaplain over Bridges, and thus did not have a Muslim chaplain. It was the discrimination in hiring where Defendants violated the Constitution.

*Cooper v. Rogers*, 788 F. Supp. 255, 259 (D. Md. 1991), aff'd, 959 F.2d 231 (4th Cir. 1992), is even further afield. That case involves what level of accommodations a prison must have in place under the *Turner* test to ensure that incarcerees' religious rights (there, the right to a kosher breakfast), were taken care of. The case has no application here, in a discrimination-in-employment case brought by a non-incarceree.

### c. Defendants violated the Establishment Clause claim.

Defendants correctly note that the chaplain supervisor position was not required to be any particular religion. Motion at 16. And yet, Defendants included in the application for this position a declaration of Christian faith, which any reasonable person would have believed was a required element for consideration. Because no specific religion was required for this position, Defendants' inclusion of the Statement of Christian Faith runs afoul of "[t]he clearest command of the Establishment Clause … that one religious denomination cannot be officially preferred over another." *Larson v. Valente,* 456 U.S. 228, 244 (1982).

As explained in Plaintiff's December filing, the government must be neutral between religious sects. Dkt. 44 at 7 (citing *Zorach v. Clauson*, 343 U.S. 306, 314 (1952)). "[Government] may not … aid, foster, or promote one religion or religious theory against another, *see, e.g., Epperson v. Arkansas*, 393 U.S. 97, 104 (1968), and it may not avoid responsibility for the First Amendment violations that occur merely by delegating its obligations to a private entity.

PMA continues to argue that the Statement of Applicant's Christian Faith did not represent a constitutional violation, or in the alternative, that completion of the statement was optional for Mr. Bridges or any other candidate. But in addition to the clear preference shown by even including the Christian faith declaration in the application, PMA completed the hiring process before removing the requirement. Dkt. 44 at 7-8 (PMA Executive Director Mark Maciel hired a chaplain supervisor on May 20, 2021, at least a week before he amended the job application). PMA, Prince George's County Jail, and by extension, the State of Maryland, exhibited a preference for Christianity. This is apparent not only through this job application process, but through PMA's self-proclaimed purpose of existence, tacitly sanctioned by the County when it contracted with PMA.

Mr. Maciel's organization is unapologetically a proselytizing Christian organization. No reasonable person or entity would mistakenly attach an evangelical statement of faith to a job application if they did not prefer a certain religion. Indeed, a "Statement of Applicant's Christian Faith" that only must be signed by people who have "Christian Faith" would be a meaningless exercise.

PMA's contract with the County required them to hire a "Chaplaincy Supervisor to manage the [] Inmate Religious Services program…" Dkt. 44, Ex. 1A,  at 21, ¶ D. Nowhere in the contract was PMA required to demand that the Chaplaincy Supervisor be of a particular faith. But that's what PMA required of Mr. Bridges, and the evidence shows that they continued this requirement through the hiring process until PMA selected the applicant of their choosing.

Whether Defendants decide to argue that it was a mistake, on purpose, or secretly optional, the intent does not matter. None of it is a defense to the First Amendment violation in this case. *See Larson v. Valente,* 456 U.S. 228, 244 (1982); *see also Abington School District v. Schempp*, 374 U. S. 203 (1963); *Engel v. Vitale*, 370 U. S. 421 (1962); *Everson v. Board of Education*, 330 U. S. 1 (1946) (all stating the test for Establishment Clause violations and none of them providing a defense for "mistake").

## CONCLUSION

The Court should deny the Motion to Dismiss.

Dated: February 28, 2022                                Respectfully submitted,

CAIR LEGAL DEFENSE FUND

BY:   /s/ Lena Masri
LENA F. MASRI (20251)
GADEIR I. ABBAS (20257) *
JUSTIN SADOWSKY (21028)
453 New Jersey Ave, SE
Washington, DC 20003
Phone: (202) 488-8787

*Mr. Abbas is licensed in VA, not in D.C.
Practice limited to federal matters.

/s/ Mirriam Z. Seddiq
MIRRIAM Z. SEDDIQ (27908)
JUSTIN EISELE (19326)
SEDDIQ LAW FIRM
110 North Washington Street
Rockville, MD 20850
Justin.eisele@seddiqlaw.com
Phone: 301.513.7832