IN THE UNITED STATES DISTRICT COURT
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| **EDREES BRIDGES,** | * | |
| Plaintiff, | * | |
| v. | * | Case No.: PWG-21-1319 |
| **PRINCE GEORGE'S COUNTY** *et al.*, | * | |
| | * | |
| Defendants. | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM AND ORDER**

Plaintiff, Edrees Bridges, an Assistant Imam at the Ali Khan Islamic Center, had been serving as a volunteer chaplain for Defendant Prince George's County ("the County") at its prison facility in Upper Marlboro, Maryland when he learned that there was an opening for a paid chaplain position. Compl. ¶¶ 1, 14, ECF No. 1. The County had contracted with Defendant Prison Ministry of America ("PMA") to oversee the provision of religious services to prisoners. *Id.* ¶ 16. Mr. Bridges alleges that the application provided to him by PMA for the chaplain position required him to sign a "Statement of Applicant's Christian Faith," which is incompatible with his Muslim faith and is a violation of the Establishment Clause of the First Amendment of the United States Constitution. *Id.* at ¶¶ 35-41.

On May 27, 2021, Mr. Bridges filed this lawsuit seeking a declaratory judgment and injunction as well as damages for the alleged constitutional violations. And on June 25, 2021, he filed the pending motion for a preliminary injunction that would require Defendants to remedy the violations by enjoining the use of the "Statement of Applicant's Christian Faith," allowing Mr. Bridges to apply for the chaplain position without submitting to a religious test, and eliminating

any existing policy whereby the chaplain position is restricted to persons who are Christian. Mot., ECF No. 12. I have reviewed the filings and find a hearing unnecessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons that follow, Plaintiff's motion for a preliminary injunction is DENIED as moot.

## BACKGROUND[1]

In December 2019, Prince George's County invited bids for the contract to provide religious services to detained individuals who were incarcerated in the County Department of Corrections. Cty. Resp. 1, ECF No. 20 (citing Ex. 1A, Invitation for Bid). Two bids were received—PMA and Good News Jail and Prison Ministry—and PMA ultimately was awarded the contract in October 2020. *Id.* (citing Ex. 1, Labbe Affidavit). Under the contract, PMA became responsible for providing a Chaplaincy Supervisor to manage the Inmate Religious Services program and staff, and PMA was also required to provide two dedicated staff members for the Islamic and Judaism religions. *Id.* (citing Ex. 1A).

Mr. Bridges served as a volunteer at the Prince George's County prison since 2018. Compl. ¶ 28. He ministered to the Muslims incarcerated in the prison, leading them in congregational prayer and offering spiritual guidance and education before and after prayers. *Id.* However, after the COVID-19 pandemic began in 2020, the County stopped allowing volunteers to enter the facility. *Id.* ¶ 29. In early 2021, PMA's executive director, Mark Maceil, began contacting past volunteers, including Mr. Bridges, to introduce himself, advise regarding resumption of services

---

[1] The facts are taken from the allegations in the Complaint and from the parties' submissions, including exhibits. "Because preliminary injunction proceedings are informal ones designed to prevent irreparable harm before a later trial governed by the full rigor of usual evidentiary standards, district courts may look to, and indeed in appropriate circumstances rely on, hearsay or other inadmissible evidence when deciding whether a preliminary injunction is warranted." *G.G. ex rel. Grimm v. Gloucester Cty. Sch. Bd.*, 822 F.3d 709, 725–26 (4th Cir. 2016), *vacated on other grounds*, —— U.S. ——, 137 S. Ct. 1239 (2017).

at the prisons, and provide information about the open position for a Chaplaincy Supervisor to manage the Inmate Religious Services program.  *Id.* ¶¶ 30-32; Maceil Aff. ¶¶ 5, 8-11, ECF No. 20-3.  Mr. Bridges expressed his interest in the position, and Mr. Maceil emailed him the application on April 24, 2021.  Compl. ¶¶ 33-34; Maceil Aff. ¶¶ 12-13.  Mr. Maceil followed up with email reminders of the closing date, and when PMA began interviewing, he contacted Mr. Bridges to request his resume and application, but Mr. Bridges did not apply.  Maceil Aff. ¶¶ 14-16; Compl. ¶ 42.

      Mr. Bridges explains that he did not apply for the position, although he satisfied the minimum qualifications, because the application required him to "subscribe" to a "Statement of Applicant's Christian Faith" that is incompatible with his Muslim beliefs.  Compl. ¶¶ 36-42.  The application Mr. Bridges received included typical employment application questions such as asking for background information on education, work experience and references. Compl. Ex. A, ECF No. 1-2.  Following these questions was a new section heading entitled "Personal Data," which was introduced as follows: "*These questions are for the leadership of Christian Chaplain Service to get to know a little about you personally and are not required answers for employment. Please leave this section blank if you are uncomfortable with anything herein.*" *Id.* at 4.  The next section heading was "Statement of Applicant's Christian Faith." *Id.* at 5.  This section included a "Mission Statement" and "Statement of Faith." *Id.*  At the end of the statement of faith, which included seven "We believe . . ." statements of Christian faith, the application states: "Without mental reservation, I hereby subscribe to the above statements," and a line for signature and date. *Id.*

      Mr. Maceil explains that the application was a standard application used for a variety of positions within the PMA organization, and he did not review it to determine if it might contain

any questions that might preclude non-Christians from applying. Maceil Aff. ¶ 18. He adds that if Mr. Bridges had asked him about the statement, he would have informed Mr. Bridges that he was not required to sign it to apply for the chaplaincy position. *Id.* at ¶ 22. Two applications were received, and PMA hired a Chaplaincy Supervisor on May 20, 2021. *Id.* at ¶¶ 23-24. Mr. Maceil also asserts that when he learned of this lawsuit, he reviewed the application and removed the "Statement of Applicant's Christian Faith" from the application. *Id.* at 28; *see* Cty. Resp. Ex. B, ECF No. 20-5.

Mr. Bridges filed this lawsuit against the County and PMA on May 27, 2021 and filed the pending motion for a preliminary injunction on June 25, 2021. He alleges two causes of action:

- Count I – Violation of First and Fourteenth Amendment to the United States Constitution (Free Exercise of Religion)
- Count II – Violation of First and Fourteenth Amendment to the United States Constitution (Establishment Clause)

He seeks a declaratory judgment and injunction; compensatory and punitive damages under 42 U.S.C. § 1983; and attorneys' fees, costs and expenses under 42 U.S.C. § 1988. By his motion, Mr. Bridges seeks to enjoin Defendants "from utilizing a 'Statement of Applicant's Christian Faith' as a part of their hiring process for positions regarding PG County jail and to allow Mr. Bridges to apply without submitting to a religious test." Mot. 8. He also seeks to require Defendants to "remedy the constitutional and statutory violations" he alleges, including "eliminating any existing policy whereby Defendants restrict the chaplain position to persons who are Christian." *Id.* at 9.

The parties extended the briefing schedule on the pending motion while they made efforts to resolve the matter, but those efforts were not successful, and the County answered the complaint on September 17, 2021 together with a crossclaim against PMA. Answer, Crossclaim, ECF No.

30. The parties then requested a stay of pretrial deadlines until January 3, 2022, while they pursued settlement discussions. Status Report, ECF No. 41. Discussions were not successful, and Defendants filed a joint motion to dismiss on January 31, 2022. Mot. Dismiss, ECF No. 45.[2] Therefore, I shall proceed with ruling on Plaintiff's motion for a preliminary injunction.

## STANDARD OF REVIEW

Typically, the purpose of a preliminary injunction is to "protect the status quo and to prevent irreparable harm during the pendency of a lawsuit, ultimately to preserve the court's ability to render a meaningful judgment on the merits." *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003) *abrogated on other grounds by eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006)). To obtain a preliminary injunction, the plaintiff must "establish that [1] he is likely to succeed on the merits, [2] he is likely to suffer irreparable harm in the absence of preliminary relief, [3] the balance of equities tips in his favor, and [4] an injunction is in the public interest." *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011). The plaintiff must satisfy each requirement as articulated. *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 347 (4th Cir. 2009); *see also Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017) ("In reviewing a motion for preliminary injunction, a court must separately consider each of the four *Winter* factors."). As a preliminary injunction is "an extraordinary remedy," it "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

---

[2] This motion has not yet been fully briefed.

When, as here, a movant seeks to alter the status quo by having a federal court order a particular action, "application of this exacting standard of review is even more searching" because the relief requested "is mandatory rather than prohibitory in nature." *In re Microsoft Corp. Antitrust Litg.*, 333 F.3d at 525.

## ANALYSIS

Generally, because a preliminary injunction is intended to preserve the status quo, a "request for an injunction to prohibit an act is rendered moot by the happening of the act." *Di Biase*, 872 F.3d at 231 (citation omitted). A preliminary injunction may also seek to alter the status quo by having a federal court order a particular action, such as Mr. Bridges has requested here— enjoin the use of the Statement of Applicant's Christian Faith as part of the hiring process, eliminate any existing policy restricting the chaplain position to persons who are Christian, and allow Mr. Bridges to apply without submitting to a religious test. Mot. 8-9. Defendants argue that the preliminary injunction sought by Mr. Bridges is moot because PMA voluntarily revised its application to remove the Statement of Applicant's Christian Faith, there is no policy restricting the position to persons who are Christian (nor was there such a policy), and PMA asserts that Mr. Bridges lacks standing to bring this lawsuit because he did not apply for the position even after being invited to do so. PMA Resp. 4-8, ECF No. 43; Cty. Resp. 9.

The application has been revised such that it no longer contains the Statement of Applicant's Christian Faith. Maceil Aff. ¶¶ 28-29; Cty. Resp. Ex. B. Mr. Maceil declared that there was never a requirement to sign such a statement, and the position was open to all religions as evidenced by his invitation to Mr. Bridges to apply. Maceil Aff. ¶¶ 12-15, 20-22, 28-29. And Mr. Bridges was not required to submit to a religious test. *Id.* at ¶¶ 20-22. The contract between the County and PMA requires PMA to ensure religious services are provided to the major religions,

to hire two dedicated staff members for the Islamic and Judaism religions, and to hire a chaplaincy supervisor to work with all recognized faiths and religious groups. *See* Invitation for Bid 22-23, ECF No. 20-2. The job description includes no restriction to persons of Christian faith. *See* Compl. Ex. B, ECF No. 1-3.

Under the circumstances, a mandatory preliminary injunction is not warranted. *See In re Microsoft Corp. Antitrust Litg.*, 333 F.3d at 525 ("Mandatory preliminary injunctive relief in any circumstance is disfavored, and warranted only in the most extraordinary circumstances."). Based on the record before me, it is unnecessary for me to issue a preliminary order requiring Defendants to take actions that have either already been undertaken or were not at issue. Therefore, Mr. Bridge's motion for a preliminary injunction shall be denied as moot. However, Mr. Bridges also seeks a declaratory judgment, a permanent injunction, and an award of damages and fees. Compl. 13-14. With regard to Defendants' remaining arguments, I shall rule on them in due course when the joint dismissal motion is fully briefed.

## ORDER

For the foregoing reasons, Plaintiff's Motion for Preliminary Injunction is DENIED as moot. This case shall proceed pursuant to the parties' agreed scheduling order, ECF No. 42.

Dated: March 15, 2022

/S/
Paul W. Grimm
United States District Judge