## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## GREENBELT DIVISION

**EDRESS BRIDGES**,

        Plaintiff,

    v.

**PRINCE GEORGE'S COUNTY MARYLAND**, a municipality; and, **PRISON MINISTRY OF AMERICA**,

        Defendants.

Case No. 8:21-cv-01319

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

Defendants Prince George's County, Maryland and Prison Ministry of America, by and through their respective undersigned counsel, pursuant to Federal Rule of Civil Procedure 56, replies to Plaintiff Edress Bridges' Opposition to Defendants' Joint Motion to Dismiss.  In support thereof, Defendants advances the following arguments.

## I.    INTRODUCTION

Defendants are entitled to a dismissal because the Plaintiff lacks standing and has failed to state a claim upon which relief can be granted. The Plaintiff's opposition relies on the idea that this Court can force Defendants to reopen a job position that has already been filled, even though the Plaintiff never applied for said job and might never apply for it. The Plaintiff himself told the Baltimore Sun that he doubts he would apply for the job if he does prevail in his lawsuit.[1] It begs the question, what is the purpose of this

---

[1] Michael Kunzelman, <u>Only Christians Could Apply for Jail Chaplain Job in Prince George's County, Federal Lawsuit Says</u>, The Baltimore Sun, May 27, 2021, https://www.baltimoresun.com/maryland/bs-md-jail-chaplain-suit-religion-20210528-zugwwdohwjgd7mg5vabbaegfs4-story.html ("Bridges doubts he would apply for the job if he does prevail in his lawsuit. 'I don't think so at all because I really don't have a lot of faith in whether or not I will be accepted,' he said."). Pursuant to Federal Rule of Evidence 201(b)(2), Defendants respectfully request this Court to take judicial notice of this news article published before Defendants filed their motion to dismiss. Further, pursuant

lawsuit? There are no lost wages for a job Plaintiff did not apply for and likely will never apply for. There is no injury for the Court to redress and no standing for the Plaintiff to seek declaratory or injunctive relief.

In his Opposition brief, the Plaintiff cites to three cases to support standing where there normally would not be standing.[2] However, as explained below, each of those cases relied on statutes that explicitly conferred standing. There is no such statute in this case.

Defendants are also entitled to a dismissal because, even if the Plaintiff had standing, he failed to state a claim under the First Amendment. The Plaintiff's Opposition mischaracterizes this as a "discrimination-in-employment case" to invent a Constitutional violation that the Plaintiff suffered. Oppo. at 6. However, there was never discrimination-in-employment when the Plaintiff was not an employee and did not apply for employment, even after he was personally recruited for the position. He looked at a job application and felt offended by looking at the application. The Constitution does not confer a right to not feel offended.

The Plaintiff is grasping at straws with the arguments in his Opposition and with this entire lawsuit. His claims fail at the pleading stage and must be dismissed.

## II.   <u>ARGUMENT</u>

The Plaintiff has failed to state allegations which are sufficient to support standing under the Federal Rules of Civil Procedure 12(b)(1), and the Plaintiff has failed to state a claim upon which relief can be granted under the Federal Rules of Civil Procedure 12(b)(6). None of the arguments preferred in Plaintiff's Opposition brief overcome the several pleading deficiencies in the Complaint.

### A.   <u>The Plaintiff lacks standing</u>.

In his Opposition, the Plaintiff relies on three cases to establish his standing to maintain his suit against the Defendants.  Unfortunately, none of the cases accomplish Plaintiff's objective.  In each of the

---

to Federal Rule of Evidence 801(d)(2)(A), the statement itself is an admission of a party opponent and is admissible evidence in a court of law.

[2] <u>Saunders v. General Services Corporation</u>, 659 F.Supp. 1042 (E.D. Va. 1987); <u>Ragin v. Harry Macklowe Real Estate Co.</u>, 6 .F.3d 898 (2nd Cir. 1993); and <u>Havens Realty Corp. v. Coleman</u>, 455 U.S. 363 (1982).

three cases, two of which are not binding on this Court, the courts found standing when no injury in fact existed because a statute created a cause of action.  No such statute has been  invoked in the present case.

      i.      **The Plaintiff suffered no injury-in-fact**.

First, the Plaintiff cites Havens Realty Corporation v. Coleman, 455 U.S. 363, 373-374, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982) for the proposition that "courts have found Article III injury existed where defendants merely deprived plaintiffs of information about housing availability based on race." Oppo. at 3. In Havens, the United States Supreme Court was asked to decide whether an owner and his employee violated the Fair Housing Act when they engaged in racial steering by falsely telling a black person that there were no available apartments to rent.  Id. at 363.   The Court found that the Fair Housing Act explicitly created a cause of action and thus "conferred on all 'persons' a legal right to truthful information about available housing."  Id.   The Court concluded that Article III standing "may exists solely by virtue of 'statutes creating legal rights, the invasion of which creates standing…" Id. at 373. There is no statute here, and therefore, there is no way around the fact that the Plaintiff did not suffer an injury-in-fact.

Plaintiff also cited the non-binding cases Ragin v. Harry Macklowe Real Estate Co., 6 .F.3d 898 (2nd Cir. 1993) and Saunders v. General Services Corporation, 659 F.Supp. 1042 (E.D. Va. 1987) as support for his proposition that he has standing; however, both cases, like Havens, are distinguishable for the same reasons. In all three cases, Havens, Ragin and Saunders, the courts recognized that the FHA created a cause of action to any individual to truthful information about available housing.  Plaintiff invoked no such statute in the present case.

There are also several significant factual distinctions between these FHA cases and the Plaintiff's situation.  The most glaring is that the Defendants did not provide Plaintiff with any untruthful information about the chaplaincy position.  Unlike the advertisements that were the subject of contention in Haven, Ragin, and Saunders, Mr. Maciel did not discourage Plaintiff, who is a known Muslim, from applying or told him the position was filled.  As the Complaint states, Mr. Maciel personally made phone calls to a list of past religious volunteers who visited the prison, including the Plaintiff and all other Muslim volunteers. Compl. ¶ 9. Mr. Maciel thanked the Plaintiff for volunteering in the past and informed the Plaintiff of the

open supervisor position. Compl. ¶¶ 10-11. On April 24, 2020, Mr. Maciel sent the job application to Plaintiff. Compl. ¶ 13. Mr. Maciel also followed-up with Plaintiff several times to inquire about the status of the application, but Plaintiff did not respond. Compl. ¶¶ 14-15. No such conduct was found in <u>Havens</u>, <u>Ragin</u> or <u>Saunders</u>. The Plaintiff does not have standing, and these three cases he cites do not change that fact.

ii.     **The Plaintiff's claims are not ripe for judicial review**.

In his Opposition, the Plaintiff argues that he overcomes the ripeness requirement for standing because submitting an incomplete application would be futile. In support for his proposition, Plaintiff relied upon the non-binding, Second Circuit case, <u>Image Carrier Corp. v. Beame</u>, 567 F.2d 1197 (2nd Cir. 1977) and, again, this reliance is misplaced because of the factual distinctions and the findings of this Court in denying Plaintiff's Motion for Preliminary Injunction. *See* ECF 49. In <u>Image Carrier Corps</u>, New York City officials passed a resolution that only permitted printers employing union labor and exhibiting union label were permitted to bid on city printing contracts. <u>Id</u>. In finding submission of a bid to be rejected futile, the United States Court of Appeals for the Second Circuit noted that preparing a bid is expensive and the 43 years of pro-union policy well-developed. <u>Id</u>. at 1202.

Unlike <u>Image</u>, the Plaintiff cannot point to a well-developed history of exclusion of Muslims. On the contrary, the contract between the Defendants and the personal recruitment of Plaintiff demonstrate that Muslims are explicitly included as a major religious denomination that must have religious services provided for in the jail. Also, unlike <u>Image</u>, there no evidence that completion of the application required any extraordinary amount of time or submission the expenditure of any sum of money. Thus, <u>Image</u> does not support Plaintiff's failure to apply for the chaplaincy position based on futility.

Also, to find futility would contradict this Court's finding in its denial of Plaintiff's Motion for Preliminary Injunction. In denying the Plaintiffs' request for a preliminary injunction, this Court aptly noted that after the "typical employment application questions," there was a new section that explained "these questions are for the leadership of Christian Chaplain Service to get to know a little about you personally and are not required answers for employment. Please leave this section blank if you are

4

uncomfortable with anything herein." *See* ECF 49, p. 3 (citing Compl. Ex. A at 4, ECF No 1-2.)  This section clearly demonstrates that the Plaintiff's impression that he was automatically excluded based on his inability to complete the entire application packet.  It is clear from the introduction to the new section that an applicant is not automatically excluded if all sections of the application packet is not completed.  Thus, it is reasonable that Defendant PMA will consider an application that is incomplete. The Plaintiff's futility argument fails.

> iii.     **The Plaintiff's claims are moot**.

Finally, the Plaintiff attempts to overcome mootness by arguing that the Court can force Defendants to in essence, fire the hired chaplain, readvertise the position, conduct another hiring process, and award damages to Plaintiff and award attorney fees.  The Plaintiff cites to no legal precedent where such conduct was ordered by any court in the country, much less a court in this federal circuit.  Also, there are two glaring and obvious problems with the Plaintiff's suggestion.  First, any alleged damages the Plaintiff sustained as a result of not applying or being offended by the application, are speculative, at best.  There is no evidence to suggest that when compared with the chaplain hired by Defendants, the Plaintiff would have been found more qualified and hired.  Second, there also no guarantee that after firing the chaplain and undergoing the hiring process again that the Plaintiff, assuming he applies, would be found more qualified than other applicants and hired.  Thus, this Court cannot provide Plaintiff with the effectual relief sought since the Defendants have already remedied the application and the Plaintiff's damages are speculative.

> B.     **The Plaintiff failed to state a claim**.

The Plaintiff's Opposition does not cite a single case where a court found a constitutional violation in the circumstances here – where someone looked at an employment application and mistakenly thought they had to convert their religion as a condition of employment.  The Plaintiff's Opposition merely restates the conclusory allegations and unreasonable inferences in the Complaint. The First Amendment Claims are unsupported by any factual allegations, and thus fails to meet the pleading standards set forth in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Neither the County nor PMA excluded the

Plaintiff from applying for the position. The Plaintiff excluded himself by failing to apply, even after PMA made multiple attempts to include the Plaintiff in the application pool.

The Plaintiff's unreasonable belief that he had to convert to Christianity in order to submit an employment application does not suffice to state a claim under the First Amendment. The Plaintiff does not sufficiently allege that the County or PMA interfered with his practice of religion or showed preference to Christian religion.

## III.    <u>CONCLUSION</u>

Based on the foregoing, Defendants respectfully request this Court dismiss the Plaintiff's entire Complaint, with prejudice.

Respectfully Submitted,

/s/ Nada N. Higuera, Esq.
Nada N. Higuera, CA SBN 299819
25026 Las Brisas Road
Murrieta, CA 92562
(951) 600-2733
*Attorney for Defendant*
*Prison Ministry of America*

RHONDA L. WEAVER
COUNTY ATTORNEY

ANDREW J. MURRAY
DEPUTY COUNTY ATTORNEY

/s/ Shelly L. Johnson, Esq.
Shelley L. Johnson
Associate County Attorney
Maryland Federal Bar No. 15853
Wayne K. Curry Administration Building
1301 McCormick Drive, Suite 4100
Largo, Maryland 20774
(301) 952-3932 voice
(301) 952-3071 facsimile
sljohnson@co.pg.md.us

## CERTIFICATE OF SERVICE

I certify under the penalty of perjury that the above DEFENDANTS'S REPLY IN SUPPORT OF

MOTION TO DISMISS was served via ECF.

s/ Shelly Padilla
Shelly Padilla