IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| **EDREES BRIDGES,** | * | |
|     **Plaintiff,** | * | |
| v. | * | Case No.: PWG-21-1319 |
| **PRINCE GEORGE'S COUNTY** *et al.*, | * | |
| | * | |
|     **Defendants.** | | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM AND ORDER**

Plaintiff Edrees Bridges has brought this action alleging religious discrimination in violation of the First Amendment of the United States Constitution's Establishment and Free Exercise Clauses. Compl. 1, ECF No. 1. Defendants, Prince George's County, Maryland and Prison Ministry of America ("PMA") contend that Mr. Bridges lacks standing and fails to state a claim upon which relief can be granted and therefore move to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defs.' Mot. 1, ECF No. 45. I have reviewed all the materials[1] and find a hearing unnecessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons discussed below, the Defendants' Motion to Dismiss is DENIED.

**BACKGROUND**

For the purposes of considering Defendants' motion to dismiss, this Court takes the facts alleged in the Complaint as true. *See Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). Mr. Bridges alleges that he served as a volunteer at the Prince George's County jail since 2018. Compl. ¶ 28, ECF No. 1. When the COVID-19 pandemic began in 2020, Prince George's County

---

[1]     The motion is fully briefed. *See* ECF Nos. 45, 48, and 50.

stopped allowing volunteers to enter the jail. *Id.* ¶ 29. In early 2021, PMA's executive director, Mark Maceil, began contacting past volunteers, including Mr. Bridges, to introduce himself, advise regarding resumption of services at the jail and provide information about the open position for a Chaplaincy Supervisor to manage the Inmate Religious Services program. *Id.* ¶¶ 30-32; Maceil Aff. ¶¶ 5, 8-11, ECF No. 20-3. Mr. Bridges expressed his interest in the position and Mr. Maceil emailed him the application on April 24, 2021. Compl. ¶¶ 33-34; Maceil Aff. ¶¶ 12-13. Mr. Maceil followed up with email reminders of the closing date, and when PMA began interviewing, he contacted Mr. Bridges to request his resume and application, but Mr. Bridges did not apply. Maceil Aff. ¶¶ 14-16; Compl. ¶ 42.

Mr. Bridges asserts that he did not apply for the position, although he satisfied the minimum qualifications, because the application required him to "subscribe" to a "Statement of Applicant's Christian Faith" that is incompatible with his Muslim beliefs. Compl. ¶¶ 36-42. The application Mr. Bridges received included typical employment application questions such as asking for background information on education, work experience and references. Compl. Ex. A, ECF No. 1-2. Following these questions was a new section heading entitled "Personal Data," which was introduced as follows: "These questions are for the leadership of Christian Chaplain Service to get to know a little about you personally and are not required answers for employment. Please leave this section blank if you are uncomfortable with anything herein." *Id.* at 4. The next section heading was "Statement of Applicant's Christian Faith." *Id.* at 5.[2] This section included a "Mission Statement" and "Statement of Faith." *Id.* At the end of the statement of faith, which included seven "We believe . . ." statements of Christian faith, the application states: "Without

---

[2] It is unclear whether this section was also optional, but Mr. Bridges alleges that he thought he was required to complete and sign it. Compl. ¶¶ 36-37.

2

mental reservation, I hereby subscribe to the above statements," followed by a line for signature and date. *Id.*

Mr. Bridges filed this lawsuit against the County and PMA on May 27, 2021, and a motion for preliminary injunction was filed on June 25, 2021. Mr. Bridges alleges two causes of action:

- Count I – Violation of First and Fourteenth Amendment to the United States Constitution (Free Exercise of Religion)

- Count II – Violation of First and Fourteenth Amendment to the United States Constitution (Establishment Clause)

He seeks a declaratory judgment and injunction; compensatory and punitive damages under 42 U.S.C. § 1983; and attorneys' fees, costs and expenses under 42 U.S.C. § 1988. In his Motion for Preliminary Injunction, Mr. Bridges sought to enjoin Defendants "from utilizing a 'Statement of Applicant's Christian Faith' as part of their hiring process for positions regarding Prince George's County jail and to allow Mr. Bridges to apply without submitting to a religious test." PI Mot. 8, ECF No. 12. Mr. Bridges also sought to require Defendants to "remedy the constitutional and statutory violations" he alleged, including "eliminating any existing policy whereby Defendants restrict the chaplain position to persons who are Christian." *Id.* at 9. Prior to my ruling on the Motion for Preliminary Injunction, PMA voluntarily removed the "Statement of Applicant's Christian Faith" from its application. Maciel Aff. ¶ 28; *see* Cnty. Resp. Ex. B, ECF No. 20-5. Because PMA declared that there was never a requirement to sign such a statement or submit to a religious test and the application was revised prior to my ruling on March 15, 2022, I denied Mr. Bridges' Motion for Preliminary Injunction as moot. *See generally* Mem. Order 6-7, ECF No. 49.

Defendants had also jointly moved to dismiss Mr. Bridges' complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Now that the joint dismissal motion has been fully briefed, I shall rule on Defendants' motion.

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 12(b)(1), the plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence. *U.S. ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347–48 (4th Cir. 2009). In a facial challenge to subject matter jurisdiction, as the Defendants assert here, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." Velencia v. Drezhlo, Civil Action No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "'is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" Id. (quoting Presley v. City of Charlottesville, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Rule 8, Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009) when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Iqbal, 556 U.S. at 678–79. See Velencia, 2012 WL 6562764, at *4 (discussing standard from Iqbal and Twombly). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 663.

When reviewing a motion to dismiss, "[t]he court may consider documents attached to the complaint, as well as documents attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not disputed." *Sposato v. First Mariner Bank*, No. CCB-12-1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013); *see CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Moreover, where the allegations in the complaint conflict with an attached written instrument, "the exhibit prevails." *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991); *see Azimirad v. HSBC Mortg. Corp.*, No. DKC-10-2853, 2011 WL 1375970, at *2-3 (D. Md. Apr. 12, 2011).

## DISCUSSION

Mr. Bridges asserts claims of religious discrimination in violation of the First Amendment of the United States Constitution's Establishment and Free Exercise Clauses and 42 U.S.C. § 1983, asserting federal question jurisdiction under 28 U.S.C. § 1331. Compl. 1. Defendants move to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), arguing that Mr. Bridges lacks standing because he has not suffered an actual and concrete injury-in-fact. Defs.' Mot. 7-8, ECF 45. Defendants also move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Mr. Bridges' claims must be dismissed because he failed to assert facts alleging that Defendants interfered with his practice of religion or showed religious preference by not hiring him. Defs.' Mot. 12-16.

### I. Standing

To satisfy constitutional standing requirements, a plaintiff must have suffered an "injury in fact," that has a causal connection to the conduct complained of and which can be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (quoting *Simon*

*v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)). Article III standing must be found to exist before a court may address the merits. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). When a defendant challenges a plaintiff's standing at the motion to dismiss stage, I must "accept as true all material allegations of the complaint and construe the complaint in favor of the complaining party." *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 181–82 (4th Cir. 2013) (quoting *David v. Alphin*, 704 F.3d 327, 333 (4th Cir. 2013).

Mr. Bridges has alleged: that Defendants prevented him from completing the application by illegally requiring applicants to sign a "Statement of Applicant's Christian Faith"; that this statement would require Mr. Bridges to abandon his religious beliefs as a Muslim in order to apply for the position; and that this violates Mr. Bridges' rights under the Establishment and Free Exercise Clauses of the First Amendment. Compl. ¶¶ 43-70.

In Defendants' motion to dismiss, they contend that Mr. Bridges lacks standing because he cannot articulate an actual injury. Defendants argue that Mr. Bridges' failure to apply, or communicate to Defendants why he did not apply, shows that there is no factual basis to demonstrate or infer that Defendants would not have accepted Mr. Bridges' application had he submitted it without having completed the offending portion (as the instructions allowed him to do), or that they would not have reviewed it the same as any other applicant's. Defs.' Mot. 10, ECF No. 45.

In order for plaintiffs to satisfy the injury-in-fact requirement, they must establish that they "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural and hypothetical.'" *Maryland v. United States*, 360 F. Supp. 3d 288, 307 (D. Md. 2019) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016)). In some

cases, the actual or threatened injury may be established "solely by virtue of 'statutes creating legal rights, the invasion of which creates standing….'" *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982) (finding that the creation of a cause of action by § 804(d) of the Fair Housing Act shows the congressional intention to give testers standing to sue); *see also* 42 U.S.C. § 3604. While the "substantial risk" of a harm occurring can establish standing, plaintiffs may not "manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Mayor and City Council of Balt. v. Trump*, 416 F. Supp. 3d 452, 485 (D. Md. 2019) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013)).

Mr. Bridges asserts that the application materials provided by Defendants were discriminatory and that he could not complete the application while maintaining his religious beliefs. Pl.'s Resp. 2-3, ECF 48. In his response, Mr. Bridges relies on *Havens Realty*, where Article III standing was found as a result of the defendant apartment complex's false representation to an African American "tester" that no apartments were available, when a white "tester" was told that they were. 455 U.S. at 373-74; *see also* Pl.'s Reply to Defs.' Opp. to Mot. for Prelim. Inj. 2, ECF No. 44. Importantly, the Supreme Court noted that § 804 of the Fair Housing Act of 1968 made various forms of housing discrimination unlawful, and that § 812(a) expressly authorized civil actions to enforce § 804. *Havens Realty*, 455 U.S. at 373. The Court was guided by its decision in *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91 (1979), in which it had held that Congress intended standing under § 812 of the Fair Housing Act to extend to the full limits of Article III, thereby depriving the Courts of the authority to create prudential barriers to standing with respect to suits brought under that section. *Id.* at 372. However, the facts of this case are not analogous to those in *Havens*. Mr. Bridges does not identify any statute or ordinance that similarly explicitly creates a cause of action to enforce its terms, let alone one that has been interpreted to

7

broadly confer standing to the farthest reaches of Article III. *See generally Havens*, 455 U.S. 363, 372-74; Compl. 5-13; Pl.'s Resp. 3; Pl.'s Reply to Defs.' Opp. to Mot. for Prelim. Inj. 2-3. Moreover, it is noteworthy that both *Havens* and *Gladstone* were decided long before *Lujan*, in which the Supreme Court extensively discussed what is necessary to meet the standing requirement of Article III.

Here, because there is no statute that creates standing, Mr. Bridges must meet the *Lujan* test for standing, i.e., the following three elements must be satisfied:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Maryland*, 360 F. Supp. 3d at 307 (citing *Lujan*, 504 U.S. at 560-61).

"For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560 n.1). The Fourth Circuit has observed that "the concept of injury is often 'elusive' in Establishment Clause claims." *Ansley v. Warren*, 861 F.3d 512, 517 (4th Cir. 2017). Notably, the standing inquiry in Establishment Clause and Free Exercise Clause cases has been tailored to reflect the kind of injuries such plaintiffs are likely to suffer. *Suhre v. Haywood Cnty.*, 131 F.3d 1083, 1086 (4th Cir. 1997). As such, the court recognizes that noneconomic or intangible injury may suffice, although "mere abstract objection to unconstitutional conduct is not sufficient to confer standing." *Id.* For example, courts have found that unwelcome direct contact with a religious display that appears to be endorsed by the state was sufficient to confer standing on school children and parents challenging Bible reading and prayer

8

in a public school. *Id.* (citing *School District of Abington v. Schempp*, 374 U.S. 203 (1963)). But a plaintiff must be directly affected by the complained-of conduct, alleging a "distinct and palpable injury to himself." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 488 (1982) (citation omitted). "Feelings of marginalization and exclusion are cognizable forms of injury, particularly in the Establishment Clause context, because one of the core objectives of modern Establishment Clause jurisprudence has been to prevent the State from sending a message to non-adherents of a particular religion 'that they are outsiders, not full members of the political community.'" *Moss v. Spartanburg Cnty. Sch. Dist. Seven*, 683 F.3d 599, 607 (4th Cir. 2012) (quoting *McCreary Cnty. v. ACLU of Ky.*, 545 U.S. 844, 860 (2005)).

Here, Mr. Bridges alleges that he was personally "disturbed that Defendants' application made clear that Bridge's faith as a Muslim would exclude him from the applicant pool." Compl. ¶ 35. He also alleged that he "cannot sign Defendants' 'Statement of Applicant's Christian Faith,' because to do so, [he] would have to abandon his religious beliefs as a Muslim." *Id.* ¶ 40. There is no question that Mr. Bridges has alleged a particularized injury rather than an "abstract interest in seeing that [the County] observes the Constitution." *Suhre*, 131 F.3d at 1087 (quoting *Saladin v. City of Milledgeville*, 812 F.2d 687, 693 (11th Cir. 1987)).

A "threatened rather than actual injury can satisfy Article III standing requirements," but "not all threatened injuries constitute an injury-in-fact." *Beck v. McDonald*, 848 F.3d 262, 271 (4th Cir. 2017) (quoting *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 160 (4th Cir. 2000) (*en banc*)). The Court rejected "emotional upset" and "fear" as "adverse effects" sufficient to convert a threatened injury into one that is "certainly impending." *Id.* at 272. Defendants contend that Mr. Bridges does not allege an actual injury because he did not submit an application for the Chaplaincy position, and there was no threatened injury because Defendants

9

did not forbid or discourage Mr. Bridges from applying. Defendants posit that the only threatened injury was Mr. Bridges' subjective belief that he would be rejected. Certainly, Mr. Bridges should not be required to make a false affirmation in order to establish injury, nor should he be required to perform the act of submitting an application without completing a required section if that act would have been futile. With a modicum of effort, Mr. Bridges may have been able to verify his assumption, or he may have learned that the objectionable section was not required and, as a result, suffered no injury. However, simply because he did not make such an effort does not mean he has no standing to challenge the offending statement in the application. *See, e.g.*, *Suhre*, 131 F.3d at 1088-89 (addressing a "change-in-behavior" or avoidance requirement for standing in religious display cases, the Fourth Circuit stated, "We are unwilling to put potential Establishment Clause plaintiffs to the task of precisely calibrating their reactions to offensive state-sponsored religious symbolism at the peril of either reacting too little to have standing or reacting so much that their constitutional claims are deemed moot.").

Defendants may be correct in their assertion that Mr. Bridges did not have to sign the offending statement, and his application would have been treated the same as any other applicant's application, but in evaluating standing at this stage of proceedings, I must accept Mr. Bridges' allegations as true, and I must assume that on the merits, Mr. Bridges would be successful in his claims. *See Cooksey v. Futrell*, 721 F.3d 226, 239 (4th Cir. 2013) (citing *Meese v. Keene*, 481 U.S. 465, 473 (1987)). Therefore, I find that Mr. Bridges has adequately pleaded an injury-in-fact.

Mr. Bridges must also adequately allege a causal connection between his injury and the objectionable conduct. *See Lujan*, 504 U.S. at 560. The parties have not addressed this element. However, there is no question that the County's application is the source of Mr. Bridges' alleged injury. The injury was not caused by "the independent action of some third party not before the

court." *Doe v. Obama*, 631 F.3d 157, 161 (4th Cir. 2011) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)). Accordingly, Mr. Bridges has met the second element.

Finally, Mr. Bridges must allege that it is "likely, as opposed to merely speculative, that [his alleged] injury will be redressed by a favorable decision." *See Lujan*, 504 U.S. at 560. "He need not show that a favorable decision will relieve his *every* injury." *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982). Rather Mr. Bridges must allege that he "personally would benefit in a tangible way from the court's intervention." *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 162 (4th Cir. 2000) (*en banc*) (citation omitted). In his Complaint, Mr. Bridges seeks a declaratory judgment, damages, an award of attorneys' fees and costs, as well as an injunction that would require the removal of the offending statement and require the County to allow Mr. Bridges to apply for the position. "The burden imposed by this requirement is not onerous," *Deal v. Mercer Cnty. Board of Educ.*, 911 F.3d 183, 189 (4th Cir. 2018), and any one of these remedies would benefit Mr. Bridges in some tangible way. Therefore, he has met the third required element.

For the above reasons, I find that Mr. Bridges has adequately pleaded standing, sufficient to withstand dismissal at this stage of the litigation.

## II. Mootness

Defendants also contend that Mr. Bridges' case is moot because Defendants have already removed the offending requirement, and the position has already been filled. Defs.' Mot. 11-12. Unlike standing, which "is determined at the commencement of a lawsuit[,] . . . subsequent events can moot" an otherwise validly raised claim. *Pashby v. Delia*, 709 F.3d 307, 316 (4th Cir. 2013). A case becomes moot when the issues are "no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Eden, LLC v. Justice*, 36 F.4th 166, 169 (4th Cir. 2022) (citing *Fleet*

11

*Fleet, Inc. v. Nike, Inc.*, 986 F.3d 458, 463 (4th Cir. 2021) (holding plaintiff's appeal was moot as the Governor had terminated the executive orders that were being challenged by plaintiffs)). There is an exception to a finding of mootness based on the "principle that a party should not be able to evade judicial review . . . by temporarily altering questionable behavior." *Id.* at 170 (quoting *Porter v. Clarke*, 852 F.3d 358, 364 (4th Cir. 2017)). A defendant that claims mootness "based on the voluntary cessation of a challenged practice must show that it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Id.* at 171 (quoting *Lighthouse Fellowship Church v. Northam*, 20 F.4th 157, 162 (4th Cir. 2021)).

Here, PMA has revised the application such that it no longer contains the "Statement of Applicant's Christian Faith." Maceil Aff. ¶¶ 28-29; Cnty. Resp. Ex. B. PMA asserts that it had never been intended as a religious test, and it was removed as soon as they became aware that it was offensive. *Id.* ¶¶ 19-22, 28-29. PMA received two applications for the position and hired one of the applicants on May 20, 2021. *Id.* ¶¶ 23-24. Mr. Bridges does not suggest that Defendants are likely to reintroduce the alleged "religious test," but he argues that the case is not moot because it is not impossible for the court to grant some relief. Pl.'s Resp. 4 (citing *Knox v. Serv. Employees Int'l Union*, 567 U.S. 298, 307 (2012)). Mr. Bridges notes that the offending statement was not removed until after this lawsuit was filed, and he argues that the court can still award damages, attorneys' fees, costs, issue a declaratory judgment, or force Defendants to reopen the position. *Id.*

In *Knox*, a union's refund notice did not moot the case because it included numerous conditions that affected which members would qualify for the refund, and the Court held that there was still a controversy as to the adequacy of the refund. 567 U.S. at 307-308. The Court stated: "A case becomes moot only when it is impossible for a court to grant 'any effectual relief whatever to the prevailing party.'" *Id.* at 307 (quoting *Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000)); *see*

12

*also Chafin v. Chafin*, 568 U.S. 165, 172 (2013) ("As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." (quoting *Knox*, 567 U.S. at 307-308)); *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 587 U.S. ----, 139 S. Ct. 1652, 1660 (2019) (noting that the case included a claim for money damages, the Court stated: "Ultimate recovery on that demand may be uncertain or even unlikely for any number of reasons, in this case as in others. But that is of no moment. If there is any chance of money changing hands, [plaintiff's] suit remains live."). Defendants argue that Mr. Bridges' damages are speculative. Perhaps they may prove to be, but that does not mean this case is moot. To establish mootness, a "demanding standard" must be met, and Defendants have failed to meet it here. *See Mission Prod. Holdings*, 139 S. Ct. at 1660.

## III.   Ripeness

The ripeness doctrine addresses "the appropriate timing of judicial intervention," *Cooksey*, 721 F.3d at 240, and "prevents judicial consideration of issues until a controversy is presented in 'clean-cut and concrete form,'" *Miller v. Brown*, 462 F.3d 312, 318-19 (4th Cir. 2006) (quoting *Rescue Army v. Mun. Court of City of L.A.*, 331 U.S. 549, 584 (1947)). Both ripeness and standing "require that those seeking a court's intervention face some actual or threatened injury to establish a case or controversy." *Doe v. Duling*, 782 F.2d 1202, 106 n.2 (4th Cir. 1986); *see also NAACP v. Bureau of Census*, 382 F. Supp. 3d 349, 363 (D. Md. 2019) (noting that standing concerns *who* may sue, while ripeness pertains to *when* a party may sue). In reviewing a ripeness claim, the Court considers: "'(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration.'" *Cooksey*, 721 F.3d at 240 (quoting *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003)). But the inquiry is "inextricably linked" to the

standing inquiry and viewed through the same lens. *Id.* The requirements for ripeness, like those for standing, are "relaxed in First Amendment cases." *Id.*

The issue before me is fit for judicial resolution. Accordingly, Defendants' motion to dismiss for lack of subject matter jurisdiction shall be denied. *See Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) ("[T]he motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction.").

## IV. Failure to State a Claim

Mr. Bridges brings his claims under 42 U.S.C. § 1983, which "provides a cause of action for damages or equitable relief to remedy 'the deprivation of any rights, privileges or immunities secured by the Constitution and laws' by a 'person' acting 'under color' of state law." *Rivero v. Montgomery Cnty., Maryland*, 259 F. Supp. 3d 334, 345 (D. Md. 2017) (quoting 42 U.S.C. § 1983)). Liability under § 1983 "is imposed only for deprivations carried out under color of law," which is "'equivalent to the "state action" requirement under the Fourteenth Amendment.'" *Goldstein v. Chestnut Ridge Volunteer Fire Co.*, 218 F.3d 337, 341 (4th Cir. 2000) (citations omitted). "State action" exists where there is "an alleged constitutional deprivation 'caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible,'" and the actor is "a person who may fairly be said to be a state actor." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (citation omitted). In addition to plausibly alleging state action, the plaintiff must also allege the elements necessary to adequately plead the asserted constitutional violation. Mr. Bridges alleges religious discrimination in violation of the First Amendment of the United States Constitution's Establishment and Free Exercise Clauses. Compl. ¶¶ 43-70.

The text of the First Amendment states, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. 1.[3] "[T]he Clauses have 'complementary' purposes." *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2411 (2022). The Establishment Clause "mandates government neutrality between religion and religion, and between religion and nonreligion." *McCreary Cnty., Ky. v. Am. Civil. Liberties Union of Ky.*, 545 U.S. 844, 860 (2005) (quoting *Epperson v. Arkansas*, 393 U.S. 97, 104 (1968)). It must be interpreted by "reference to historical practices and understandings." *Kennedy*, 142 S. Ct. at 2411 (quoting *Town of Greece v. Galloway*, 572 U.S. 565, 576 (2014)). The Free Exercise Clause focuses on the latter phrase. "The free exercise of religion means, first and foremost, the right to believe and profess whatever religious doctrine one desires." *Employment Div., Dept. of Human Resources of Oregon v. Smith*, 110 494 U.S. 872, 877 (1990). Moreover, the government "may not compel affirmation of religious belief, punish the expression of religious doctrines it believes to be false, impose special disabilities on the basis of religious views or religious status, or lend its power to one or the other side in controversies over religious authority or dogma." *Id.* (citations omitted). "It is an elemental First Amendment principle that government may not coerce its citizens 'to support or participate in any religion or its exercise.'" *Town of Greece, N.Y. v. Galloway*, 572 U.S. 565, 586 (2014) (citations omitted).

A plaintiff may state a free exercise violation by alleging facts "showing that a government entity has burdened his sincere religious practice pursuant to a policy that is not neutral or generally applicable." *Kennedy*, 142 S. Ct. 2407, 2422 (2022) (citation omitted). If a plaintiff is able to make such a showing, the government must then "satisfy strict scrutiny by demonstrating its course was

---

[3] The Establishment and Free Exercise Clause of the First Amendment is applicable to the states by virtue of the Fourteenth Amendment. *See Employment Division v. Smith*, 494 U.S. 872, 876-77 (1990).

justified by a compelling state interest and was narrowly tailored in pursuit of that interest." *Id.* (citation omitted). "[L]aws incidentally burdening religion are ordinarily not subject to strict scrutiny under the Free Exercise Clause so long as they are neutral and generally applicable." *Fulton v. City of Phila., Penn.*, 141 S. Ct. 1868, 1976 (2021).

Mr. Bridges has adequately alleged state action. *See* Compl. ¶¶ 21-22, 44-45, 57-58. Defendants do not argue otherwise. Mr. Bridges has also adequately alleged that Defendants manifested a preference for the Christian religion in PMA's complained-of application as well as through the County's prior agreements with Good News Jail and Prison Ministry. *Id.* ¶¶ 37-38, 59-62, 66-68. He alleges that Defendants' actions and practices treat Muslims and others less favorably than Christians, and these practices have no identified compelling state interest. *Id.* ¶¶ 18-20, 69. Mr. Bridges further alleges PMA's application's requirement to complete the "Statement of Applicant's Christian Faith" compelled him to affirm Christian beliefs, which is incompatible with his religious beliefs as a Muslim. *Id.* ¶¶ 36-41. He alleges that Defendants forced him to choose between applying for a position and abandoning his sincerely held religious beliefs, which is a deprivation of his right to the free exercise of religion. *Id.* ¶¶ 46-48.

Defendants argue that the offending statement was optional, and Mr. Bridges was not denied the opportunity to practice his religion, nor was he denied the ability to apply for the chaplain position. Defs.' Mot. 14. Defendants assert that the contract between the County and PMA requires PMA to ensure religious services are provided to the major religions, to hire two dedicated staff members for the Islamic and Judaism religions, and to hire a chaplaincy supervisor to work with all recognized faiths and religious groups, and the job description for the chaplaincy position includes no restriction to persons of Christian faith. *See* Invitation for Bid 22-23, ECF No 20-2; Job Descr., Compl. Ex. B, ECF. No. 1-3. Defendants present factual questions and defenses

for the complained-of practices which, if ultimately proven, may defeat Mr. Bridges' free-exercise claim. But at this stage in the litigation, Mr. Bridges' allegations are sufficient to plausibly plead that Defendants' policies and practices preferred the Christian religion over other faiths and that they burdened his sincerely held religious beliefs.

At this juncture, accepting as true the facts as alleged, and construing them in the light most favorable to Mr. Bridges, I shall deny Defendants' dismissal motion. Additional factual development and argument will be required before I can make any further findings such as, for example, the level of scrutiny required to analyze Mr. Bridges' claims.

## CONCLUSION

For the foregoing reasons, Defendants Prince George's County, Maryland and Prison Ministry of America's Joint Motion to Dismiss, ECF No. 45, is DENIED. A telephone conference will be promptly scheduled to discuss the Scheduling Order, which was previously stayed, and further proceedings.

Dated: September 6, 2022

                                            /S/
                                        Paul W. Grimm
                                        United States District Judge